487 So.2d 815 (1986)
Annie Lee Hussey MONAGHAN, et al.
v.
Martha WAGNER, et al.
No. 55456.
Supreme Court of Mississippi.
April 23, 1986.
*816 William M. Beasley, Mitchell, Eskridge, Voge, Clayton & Beasley, Tupelo, for appellants.
Michael Malski, Carnathan & Malski, Amory, for appellees.
Before ROY NOBLE LEE, P.J., and HAWKINS and PRATHER, JJ.
HAWKINS, Justice, for the Court:
The heirs of Mary M. Hussey appeal from a judgment of the chancery court of Itawamba County finding that, following the death of the grantor life tenant, an ouster was required by her, as grantee, against the remaindermen before she could establish title by adverse possession; and that, moreover, they failed to establish title in Mary by adverse possession.
They also appeal the directing of a sale at public outcry rather than partiting the land in kind between all the heirs.
We find the chancellor was correct in his determination both that an ouster was necessary, and further that the requirements of adverse possession were not shown in any event under the facts of this case. We affirm the decree as to ownership.
We also find the chancellor erred in decreeing a sale at public outcry, and that a hearing should be held to determine if the land may be fairly partited in kind under the statute. On partition we reverse and remand.

FACTS
On November 16, 1915, C.C. Hussey, Sr., conveyed a life estate to his son C.C. Hussey, Jr., to four tracts of land, three in Itawamba and one in Lee County, totaling slightly over 200 acres.[1]
The body of the deed recited:
In consideration of Love and affection I have for my Son, I convey and warrant to C.C. Hussey, Jr.  during his Natural life and at his death to the children of his body, if any and in case of default of children at his death, then to revert to my heirs at law.
This was the father's method of conveying his property to his children and grandchildren.[2]
*817 C.C. Hussey, Jr., was either then married to, or subsequently married Mary Elgis Hussey (also named Mary M. Hussey) and six children were born of this marriage. For ease of reading this opinion all these descendants will be referred to as "Mary's children."[3]
C.C., Jr., and Mary lived together until 1942, when they separated and he moved to Arkansas. Mary obtained a divorce from him in the chancery court of Lee County on January 15, 1947.
C.C., Jr., lost no time acquiring a new family. He had five children by Willie Louise Hare Hussey (also known as Ruth Hare Hussey). Three of these children were born before his divorce from Mary.[4] For ease of reading, this second set of children will be referred to as "Ruth's children." They were raised in Arkansas, and apparently had no social or family association with Mary's children.
C.C., Jr., entered into a bigamous marriage with Ruth on May 19, 1945. Ruth obtained a divorce from him in Arkansas on April 19, 1963, at which time she was awarded custody of the children. Martha Hussey Wagner testified in the trial of this case that the children lived with C.C., Jr., after the divorce.[5]
In 1931 this land was sold for delinquent ad valorem taxes, and patented to the State in 1933.
On February 22, 1942, C.C., Jr., executed a form warranty deed to this property, which was recorded on the land deed records of the respective counties in 1946. This deed recites:
In consideration of the indebtedness I am due her and the assumption of the indebtedness due the Peoples Bank & Trust Company of Tupelo, Mississippi, I convey and warrant unto Mary Eljis Hussey, all rights, title and interest I have in (land described).
* * * * * *
Intending to quit claim hereby as was intended by deed of C.C. Hussey to C.C. Hussey, Jr., dated November 16, 1915, recorded in Book 125, Page 294, deed records of Lee County, Mississippi.
On September 9, 1947, the State issued a forfeited tax land patent to Mary M. Hussey to the following described realty in Itawamba County:
Southwest Quarter of Southeast Quarter (SW 1/4 of SE 1/4) and North Side of South Half of Northeast Quarter, Thirty-three and One-fourth Acres (N. side S 1/2 of NE 1/4. 33 1/4 A.) and South Half of Southwest Quarter (S 1/2 of SW 1/4) of Section 23, Town. 10, Range 7.
C.C., Jr., died on September 27, 1967.
From 1942 until her death on November 7, 1981, Mary paid the taxes on the realty. From 1966 through 1981 she leased the land to Charles William Shumpert, who farmed it. Mary died testate.
On October 29, 1982, a complaint was filed in the chancery court of Itawamba *818 County by Ruth's children against Mary's children to remove the cloud cast by the tax sale and land patent, to confirm the interest of Ruth's children in the land, and for partition.
Mary's children answered, and filed a cross bill to confirm title in themselves, alleging that Mary acquired title to the realty by adverse possession. At trial only two witnesses testified, Mrs. Wagner (Ruth's daughter) for the plaintiffs, and Shumpert for the defendants. Mrs. Wagner acknowledged that following the death of Mary, Ruth's children were aware they owned an interest in the realty, but asserted no claim in Mary's lifetime because of her age and health.
In his opinion the chancellor ruled Mary only acquired a life estate in the deed to her from C.C., Jr., that in order to acquire title to the realty from the plaintiffs she would have had to have shown an ouster of them. He further held that the elements of adverse possession had not been proved. He concluded that each of C.C., Jr.'s, children owned an undivided one-eleventh (1/11th) fee simple interest and that Charles Christopher's widow and children each owned an undivided one-thirty-third (1/33rd) fee simple interest. The complaint was sustained, the cross bill denied.
The chancellor held that the land was so circumstanced that partition in kind could not be made without general prejudice to the owners; and that it should be sold at public outcry.
Mary's children have appealed.

LAW
Mary's children argue first that at the death of C.C., Jr., she was not a tenant in common and that an ouster was not required in order to acquire title by adverse possession; and second, that the chancellor also erred in failing to find Mary acquired title by adverse possession from 1967 to 1981. Finally, they argue that the chancellor erred in failing to decree a partition in kind.
The deed from C.C., Jr., to Mary only conveyed his life estate. Even if it had been an unequivocal general warranty deed, all C.C., Jr., could convey was a life estate, and Mary was charged with constructive knowledge, and in all likelihood had actual knowledge that all he owned was a life estate. Moreover, the deed itself indicates C.C., Jr., only intended to convey his life estate. Therefore, Mary stepped into C.C., Jr.'s, shoes during his lifetime as to this realty. It was her obligation to pay taxes on the land during his lifetime. No claim of adverse possession could be asserted as against the remaindermen simply by paying taxes. Furthermore, the remaindermen had no right of possession during their father's lifetime. See: Spearman, et al. v. Hussey, et al., 210 Miss. 851, 50 So.2d 610 (1951). Indeed, the appellants do not contend that the adverse possession period began prior to C.C., Jr.'s, death, but rather upon Mary's claim following C.C., Jr.'s, death.
The term "ouster" is used primarily in cases involving a claim of adverse possession by a tenant in common. The meaning of, and what constitutes an ouster was set forth in Nichols v. Gaddis and McLaurin, Inc., 222 Miss. 207, 75 So.2d 625, 629 (1953):
An ouster is the wrongful dispossession or exclusion by one tenant in common of his cotenants from the common property of which they are entitled to possession. An ouster cannot be proved merely by acts which are consistent with an honest intent to acknowledge the rights of the cotenant. It does not necessarily imply an act accompanied by force. Because of the relationship between tenants in common, possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant in common... . In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either "from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto", as by conduct so unequivocal *819 that knowledge on the part of the cotenant out of possession must be necessarily presumed... . "The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So.2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the co-tenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them."
In Stampley, et al. v. Green, et al., 251 Miss. 47, 168 So.2d 300, 301 (1964), this Court held:
A physical ouster is usual, but not necessary to establish title in a tenant in common by adverse possession. However, the ouster must be of an unequivocal nature, and distinctly hostile to the rights of the other cotenants, so that the intention to disseize is clear and unmistakable... .
Of course, a physical ouster is impossible of accomplishment as against a tenant in common not in possession, and who may never have set foot on the land nor have any intention of doing so. Ouster in such a case must be unequivocal notice of some kind to the co-tenant not in possession that the one in possession intends to hold and claim ownership of the property to the exclusion of all others. Therefore, any "ouster" by Mary would necessarily have had to be accomplished by some notice by her to the remaindermen that she was claiming title to the land after September 27, 1967.
It makes no difference whether the chancellor held there had to be an "ouster" shown or not, because Mary had the same burden of establishing ownership in this case as against the remaindermen as is required in an ouster, that is, unequivocal notice that her possession following September 27, 1967, was hostile and adverse to them. From 1942 until C.C., Jr.'s, death Mary had the right to possess the realty. In Day v. Cochran, 24 Miss. 261 (1852), we held that when a party was in possession of property under a lawful title, and continued to hold after the right expired, this possession in and of itself would not be regarded as adverse to the party entitled to the reversion. In Lyebrook v. Hall, 73 Miss. 509, 19 So. 348 (1896), we held that the grantee of a dower interest who, after the death of the doweress, permitted the land to be sold for taxes and was the purchaser at the tax sale, still did not hold the land adverse to the heirs in the absence of notice to them that his claim was exclusive. And, in Williams v. Patterson, 198 Miss. 120, 21 So.2d 477 (1945), we held that a possession permissive in its inception cannot become adverse to the owner until a positive assertion of a right hostile to the owner is brought home to him. In the recent case of Hewlett v. Henderson, 431 So.2d 449 (Miss. 1983), we required that such possession must be accompanied by notice to the owner that it is adverse.
It therefore follows that whichever route the chancellor pursued, the rule and result are the same. Neither laches nor estoppel were alleged in this case. Mary did no more than possess the land. She gave no notice to the remaindermen that her claim was exclusive or hostile to them. There was no deed of trust or oil and gas lease of public record executed by her in which she claimed exclusive ownership, or indeed any ownership of the land. There is nothing in this record to indicate she did anything to bring home to the heirs of C.C., Jr., that she was claiming this land to their exclusion.
We agree with the chancellor that an ouster was necessary under the facts of this case. See: Thomasson v. Kinard, 153 Miss. 398, 121 So. 109 (1929); but as shown above, it made no difference whether Mary had to establish her claim of adverse possession through an "ouster" or not, the burden of proof was essentially the same. Mary's children simply failed to meet this burden in the trial of this cause. As to the ownership in the realty, the decree of the chancery court should be affirmed.

THE PARTITION
Without proof the chancellor found that the land should be sold at public outcry *820 rather than partited in kind. In construing Miss. Code Ann. § 11-21-11 this Court has consistently held that a sale of the land cannot be decreed unless it has been shown that an equal partition in kind cannot be made. A partition in kind is always preferred and will be jealously guarded by this court. No proof on this issue was had by the chancellor before rendition of his decree. From this record we are not convinced a partition in kind cannot be fairly made under the statute. See: Miss. Code Ann. § 11-21-11  Miss. Code Ann. § 11-21-17. In Bailey v. Vaughn, 375 So.2d 1054 (Miss. 1979), we set forth criteria in determining whether land should be partited in kind or a sale ordered in the first instance.
We therefore remand for hearing on whether the land may be fairly partited in kind.
AFFIRMED AS TO OWNERSHIP; REVERSED AND REMANDED AS TO PARTITION.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] A description of the realty is as follows:

47 acres, more or less, of Southeast Quarter of Section 23, Township 10, Range 7 East, Itawamba County, Mississippi, bounded on North by Old Fairground and Cardsville Road, which shall be his North line;
73 acres, more or less, south part of the Southwest Quarter of Section 23, Township 10, Range 7, Itawamba County, Mississippi, being all of said Southwest quarter that lies South of the Old Fairground and Cardsville public road, and North of the new public road in Itawamba County, Mississippi.
ALSO
33 1/5 acres in Northeast Quarter of Section 23, Township 10, Range 7, Itawamba County, Mississippi and is bounded on the North by Tom M. Hussey's land in Itawamba County, Mississippi.
ALSO:
50 acres in the Southeast Quarter of Section 22, Township 10, Range 7, and is described as 50 acres lying immediately north of the new Fairground and Cardsville public road as same runs through said quarter and extends East and West across said quarter and far enough North to make 50 acres. Said land in Lee County, Mississippi.
[2] The conveyances of C.C. Hussey, Sr., were later confirmed in Lee County chancery court proceedings. A number of years later, a lawsuit as to one of the conveyances reached this Court. See: Spearman, et al. v. Hussey, et al., 210 Miss. 851, 50 So.2d 610 (1951).
[3] These children were:

(1) Annie Lee Hussey Monaghan
(2) Ruth Hussey Black
(3) Mary Alice Hussey John
(4) Joe Hussey
(5) Jimmy Morgan Hussey
(6) Charles Christopher Hussey.
Charles Christopher died subsequent to his father's death, leaving surviving him his widow, Bessie, and two children, Mack and Wayne Hussey, who inherited his interest.
[4] These children and their dates of birth are as follows:

(1) Charles Cupid Hussey, January 15, 1944
(2) Sandra Lynn Hussey Simmons, January 30, 1945
(3) Linda Kay Hussey Morgan, June 17, 1946
(4) Martha Hussey Wagner, September 30, 1947
(5) Paul Jerry Hussey, April 13, 1952.
[5] This testimony is undisputed, but not borne out by the Arkansas documentary evidence. Ruth sued for divorce on September 21, 1962, and she was awarded a divorce on the grounds of "general indignities."

The decree further recited that Ruth was entitled to the custody of the minor children, and that the defendant was "unable to provide for the children at this time."
The decree further recited that the defendant "is the owner of certain real estate in the State of Mississippi." Also, that Ruth was making no claim for herself to any of the defendant's real estate.