602 So.2d 809 (1992)
Bernice Aeppli JORDON, Edward Aeppli, Mary Rubina Aeppli Walters, Shirley Ann Aeppli Decker, Joy Karlene Aeppli Musick, Alice Evelyn Aeppli Arnold, Karl Frederick Aeppli, III, Herman Wayne Aeppli, Mary Grey Aeppli Dodd, John Calvin Aeppli, James Edward Aeppli, Shelia Gail Aeppli Gibson, and Vernon Thomas Aeppli
v.
Everette WARREN, Individually and as Executor of the Estate of M.L. Walley, Deceased, Joyce Aeppli, Alfred A. Clark, Aubrey L. Clark, Robert E. Clark, Mary L. Leonard, Individually, and Mary L. Leonard, as Executrix of the Estate of Hilda Aeppli Clark, Deceased.
No. 90-CA-0833.
Supreme Court of Mississippi.
May 20, 1992.
*810 Darryl A. Hurt, Jr., Hurt & Hurt, Lucedale, for appellants.
Williams S. Murphy, Murphy & Shepard, Lucedale, for appellees.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Karl Fredrick Aeppli, Sr., and Nellie Aeppli were the parents of eight (8) children; Hilda, Bernice, Mary Rubina, Edward, Karl, Jr., John, Walter, and Nellie Albertine. These children and their issue make up the parties of this case.
Karl Aeppli, Sr. died in 1935. In 1938, Nellie purchased a 19 1/2 acre tract of land. In 1939, Nellie married M.L. "Fate" Walley. There were no children born to this marriage and M.L. did not adopt Nellie's children from her previous marriage. M.L. and Nellie together purchased a second 19 1/2 acre tract. In 1949, M.L. and Nellie purchased a 40 acre tract. M.L. and Nellie also purchased a one acre strip across the *811 two 19 1/2 acre strips. This brought the total amount of property to approximately 80 acres. On September 28, 1957, M.L. Walley allegedly conveyed his interest in 61 acres of the property to Nellie, reserving only a life estate. The deed was recorded on April 19, 1966. Nellie died in 1972, leaving a will which gave M.L. a life estate in all of her property.
In 1974, M.L. Walley married Maxine Parker. On March 4, 1977, M.L. conveyed to Maxine sixty-one (61) acres of the property, creating an estate by the entirety with right of survivorship. M.L. and Maxine later divorced and Maxine quitclaimed the property back to M.L. on December 1, 1977.
On October 27, 1978, M.L. filed a petition for letters testamentary for the probate of the will of Nellie. In the petition M.L. made mention of the 1957 deed. He stated he was advised that the deed was a survivorship deed and it was not until after her death that he discovered the mistake that had been made. M.L. requested that Nellie's land before the executing of the deed be declared as her land and the land that belonged to him be declared as his land.
Everette Warren was the grandson of Nellie, through Nellie Albertine. M.L. Walley was Everette's step-grandfather. Except for a ten (10) year period, Everette had lived on the property for almost all of his life. Everette and his wife, Delilah, returned to the property around 1977, some twelve years before the litigation began. When they moved back, they had to convert the old house from its use as a corn crib to a habitable structure. Everette and Delilah lived on the property and with M.L. helping him, worked the land. M.L. died on November 15, 1986, leaving all of his property to Everette and Delilah.
On May 21, 1988, the original petition for partition was filed in the George County Chancery Court. The petitioners, the children and grandchildren of Nellie Aeppli Walley, alleged that they, along with Everette Warren, were the sole heirs at law of Nellie Aeppli Walley, and they were all tenants in common of the disputed land. In answer to the petition, Everette alleged that the petitioners were not heirs to all of the disputed land but were heirs only to the 19 1/2 acre tract owned by Nellie Aeppli Walley prior to her marriage to M.L. Walley and that the 1957 deed was destroyed and replaced by an instrument not signed by M.L. Walley. Everette requested that the petition be dismissed and he cross-petitioned requesting that M.L. Walley be declared the owner of the second 19 1/2 acre tract and the 40 acre tract, because he had adversely possessed the land for more than 10 years prior to the petition.
The petition was heard by the chancellor on May 11-12, 1989, and October 9, 1989. The witnesses testifying in favor of the petition stated they had a good relationship with M.L. after the death of their mother, Nellie, and indicated that at no time after 1957 did M.L. ever act hostile toward them in regard to the land or make a claim to it. The witnesses also indicated that Everette never made a claim to the property or did anything to put them on notice that he was claiming the property. They did not think it strange that Everette was living on the land because he had lived there almost all of his life. It was pointed out that at one time M.L. tried to get his stepchildren to convey all of their right, title and interest in the property to him. The instrument contained signature blanks for all of the children, but was only signed by Albertine Aeppli Warren, Everette's mother.
Everette, who was claiming 60 acres through M.L. Walley and an interest in the other 20 acres through Nellie, testified that he knew of one instance when Edward and Eugene Aeppli tried to remove M.L. from the property. He stated that M.L. came to his home visibly upset by the incident. Everette stated that he and M.L. paid the taxes on the property and the taxes on one of the 19 1/2 acre tracts was assessed in Nellie's name and that the remainder was assessed in M.L.'s name. The property had always been assessed separately. Everette testified he farmed the land, fenced it, built a pump shed, and harvested the pecans for some 12 years, and no one had challenged his use of the land. He never claimed the land outright as his.
*812 Delilah Warren, Everette's wife, testified that after the death of Nellie, M.L. allowed her children to come into the house and take the things they wanted. She indicated that M.L. argued with Walter and Edward Aeppli on two occasions. Delilah also testified that M.L. became angry when he first saw the 1957 deed and denied that the signature on the instrument was his. She also testified that although M.L. mentioned the 1957 deed in his petition for letters testamentary, he did call the deed a forgery.
In regard to the 1957 deed, Mrs. A.F. Powell, whose signature appears on the acknowledgment of the deed, testified that the signature appeared to be erased and she would not have acknowledged the instrument if it had been erased or changed. She testified that the instrument did not appear to be the one she notarized, because the margins were different and there was an erasure. Mrs. Powell testified that M.L. Walley did appear before her on the same day and signed an instrument and she notarized it. Delilah Warren testified that the signature on the 1957 deed was not M.L.'s.
After considering the evidence, the chancellor found that Everette Warren had established adverse possession of 10 acres of the disputed property, having lived on the property for 12 years and having made certain improvements on the property. The chancellor quieted title in the 10 acres in Everette. The chancellor found that the remaining elements of adverse possession were insufficient to find that the other cotenants had been ousted because they had no notice of any adverse claim to the property by M.L. and Everette. Everette was given 10 acres and the rest of the property was found subject to partition. The 1957 deed was found not to be a forgery because it was not proven by clear and convincing evidence and because M.L. was aware of the mistake but did nothing to correct it.
The chancellor reconsidered his findings after a motion to reconsider by Everette. However, in the supplemental ruling the chancellor mistakenly upheld the deed when he intended to find the deed a forgery under Miss. Code Ann. § 97-21-21 (1972), as Amended. In its decree the court ordered that all of the land be partitioned except for the 10 acres given to Everette Warren through adverse possession.
The Aepplis appeal to this Court and assign as error the following:
1. The court erred in setting aside that certain warranty deed from M.L. Walley to his wife, Mrs. Nellie Aeppli Walley, dated September 28, 1957, as a forgery; and,
2. The court erred in holding that Everette Warren adversely possessed ten (10) acres of real property from the Nellie Aeppli Walley Estate.
The standard for reviewing the findings of a chancellor is a familiar one. This Court will not disturb the findings of a chancellor unless he was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Bell v. Parker, 563 So.2d 594, 597 (Miss. 1990); Williams v. Evans, 547 So.2d 54, 58 (Miss. 1989); Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1313 (Miss. 1989). When a chancellor's findings are supported by substantial, credible evidence in the record this Court will not reverse. Tinnin v. First United Bank of Mississippi, 570 So.2d 1193, 1194 (Miss. 1990). With that in mind we turn to the assigned errors.

I.

WAS IT ERROR TO SET ASIDE THAT CERTAIN WARRANTY DEED FROM M.L. WALLEY TO HIS WIFE, MRS. NELLIE AEPPLI WALLEY, DATED SEPTEMBER 28, 1957, AS A FORGERY?
This assignment involves the alleged deed executed by M.L. Walley, by which he conveyed to Nellie his interest in the two tracts that they obtained together, reserving only a life estate in himself. The chancellor originally found that the deed was not a forgery, because M.L. knew about a "mistake" in the deed and did nothing to correct the situation, and there was a lack of clear and convincing evidence, following *813 Jones v. Minton, 244 Miss. 354, 141 So.2d 564, 565 (1962), because a long period of time had elapsed. In a supplemental ruling in response to a motion for reconsideration, the chancellor again ordered that the deed should be allowed to stand. However, in a letter to the parties the chancellor pointed out that he erred in allowing the deed to stand in the supplemental ruling. Applying Miss. Code Ann. § 97-21-21 (1972), the chancellor found the deed to be a forgery.
This Court has stated that courts should not lightly disturb the efficacy of facially valid and properly recorded deeds. Anderson v. Burt, 507 So.2d 32, 36 (Miss. 1987). There is a presumption against bad motive, dishonesty, and fraud, and such charges must be proven by clear and convincing evidence. There is also a presumption that a certificate of acknowledgement to a deed imports verity and truth and this presumption must also be overcome by clear and convincing evidence. Jones v. Minton, 244 Miss. 354, 358, 141 So.2d 564, 565 (1962); Accord, Goodwin v. McMurphy, 435 So.2d 639 (Miss. 1983).
The deed was acknowledged and recorded. However, on the face of the deed is an obvious erasure of a signature with the signature "M.L. Walley" substituted in its place. The signature on the deed appears to have been altered. Such an alteration could be material and could operate to void the deed. 3A C.J.S. Alteration of Instruments § 7, 39 (1973). Erasures and interlineations on the face of a deed are not an alteration in a legal sense, unless made after the delivery of the instrument. Whether a change or alteration in an instrument was made before or after the execution and delivery is a question of fact to be determined by the trier of fact. The person raising the question of erasure or interlineation has the burden of showing that it occurred after the execution of the deed. Scott v. Perry, 140 Miss. 452, 106 So. 12, 13 (1925). The question, then, is whether there was clear and convincing evidence of an erasure after the deed was executed.
The deed was allegedly executed and acknowledged in 1957, but was not recorded until 1966. The deed was not questioned until M.L. petitioned for letters testamentary for Nellie's estate. In the petition M.L. stated:
4. Petitioner [M.L.] would show that on September 28, 1957, he executed a deed which was represented to him as being a survivorship deed; that he was advised by said decedent and her attorney that said deed would vest his wife with title to all of his property should said petitioner die first but if petitioner's wife predeceased him, then under those circumstances all of the title to her property would vest in petitioner; that it was not until after the death of petitioner's wife that he discovered the mistake that had been made; that petitioner had signed a deed relying on the representations made to him by his wife and her attorney that the deed he signed was a deed creating a survivorship which would vest title to his property and his wife upon his death and would vest title to her property in petitioner upon her death and petitioner says that because of the error made at the time of the signing of the deed dated September 28, 1957, that that land which belonged to petitioner prior to the deed of September 28, 1957, should be declared to be his land and the land belonging to his wife at the time of the making of the deed of September 28, 1957, should be declared her property and the property of her children.
M.L. did not question his signature on the deed, but simply asserted that the intent of the deed was a mistake. The mistake being that it was represented to him the deed created a right of survivorship in the property. He did not know that he conveyed the property to Nellie and reserved a life estate in himself. No where in the statement does M.L. claim that the deed was a forgery, nor did he take action to correct the situation. The charge of forgery was not raised until Everette filed his answer to the petition to partition.
At the hearing M.L. denied that the signature on the deed was his. Witnesses familiar with M.L.'s signature testified that the signature was not his. Mrs. A.F. Powell, *814 who acknowledged the deed, testified that she would not have acknowledged it if it appeared to have been erased or changed. This indicates that the erasure was not there when she acknowledged the deed. Powell also testified that the instrument did not appear to have been the one she acknowledged.
In light of this evidence, the chancellor, in his final ruling on the matter, found the deed to be a forgery under Miss. Code Ann. § 97-21-21 (1972). That statute states:
The total erasure, obliteration, or destruction of any instrument of writing, with the intent to defraud, by which any pecuniary obligation or any right, interest, or claim to property, shall be or shall be intended to be created, increased, discharged, diminished, or in any manner affected, shall be forgery in the same manner and in the same degree as the false alteration of any part of such instrument of writing.
Though the chancellor did not specifically find that the erasure occurred after the deed was executed, this Court must assume that such a finding was made in favor of Everette Warren. Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990). Though M.L. did not claim forgery in his petition, the erasure on the deed is an obvious one. The finding of the chancellor is supported by substantial evidence.
The chancellor did not err in finding the deed to be a forgery.

II.

DID THE COURT ERR IN HOLDING THAT EVERETTE WARREN ADVERSELY POSSESSED TEN (10) ACRES OF REAL PROPERTY FROM THE NELLIE AEPPLI WALLEY ESTATE?
Nellie and M.L. purchased two tracts of land together, a 19 1/2 acre tract and a 40 acre tract. At common law the presumption was that two or more persons who bought land together without specifying the terms of their occupancy became joint tenants, with the concomitant right of survivorship. Most states have enacted statutes to do away with the presumption so that parties who do not express a desire to be joint tenants are tenants in common. C. Haar, Property and Law, p. 854 (2nd ed. 1985). Mississippi has enacted such a statute and it states:
All conveyances or devises of land made to two or more persons, including conveyances or devises to husband and wife, shall be construed to create estates in common and not in joint tenancy or entirety, unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or entirety with the right of survivorship. But an estate in joint tenancy or entirety with right of survivorship may be created by such a conveyance from the owner or owners to himself, themselves or others, or to himself, themselves and others.
This section shall not apply to mortgages or devises or to conveyances made in trust.
Miss. Code Ann. § 89-1-7 (1972). (Emphasis added).
It does not manifestly appear on the face of the deeds to the two tracts of land purchased after the marriage of Nellie and M.L. that they intended to create estates in joint tenancy with the right of survivorship. Without such an intention appearing in the deed, or in a later conveyance, the presumption is that they created a tenancy in common with no right of survivorship. Upon the death of one tenant in common, the heirs of the deceased cotenant take over his place in the shared possession. 86 C.J.S. Tenancy in Common § 9 (1954). Upon Nellie's death, M.L. and Nellie's heirs became cotenants in the 60 acres of land.
Everette, though a cotenant through his deceased mother, claimed all 60 acres of the two tracts through his step-grandfather, M.L. Walley, as he allegedly was in adverse possession of the property against the other cotenants for more than ten years. Before one tenant in common may claim adverse possession against his cotenants, there must be an ouster of the other cotenants such as will afford them notice that the claim is adverse to their *815 interests. Gavin v. Hosey, 230 So.2d 570, 574 (Miss. 1970).
An ouster is the wrongful dispossession or exclusion by one tenant in common of his cotenants from the common property of which they are entitled to possession. It differs from the acts constituting an ouster in cases not involving tenants in common only in the type of evidence by which it may be established. As between persons who admittedly took title as tenants in common, the proof of ouster of one of them by the other must be much stronger than between strangers. 86 C.J.S. Tenancy in Common § 27 (1954). An ouster of a cotenant not in possession must be unequivocal notice of some kind to the cotenant not in possession that the one in possession intends to hold and claim ownership of the property to the exclusion of all others. Monaghan v. Wagner, 487 So.2d 815, 819 (Miss. 1986). The cotenant in possession must effect an ouster of the other cotenant of an unequivocal nature and distinctly hostile to the rights of the other so that the intent to possess adversely is clear and unmistakable. Davis v. Davis, 508 So.2d 1062, 1065 (Miss. 1987).
The cotenant alleging ouster has the burden of establishing that the other cotenants were unequivocally ousted by actual notice or conduct equivalent thereto. Steele v. Mack, 341 So.2d 1322, 1324 (Miss. 1977). Evidence of acts by a cotenant not inconsistent with co-tenancy, such as using the land and paying taxes on it, do not constitute an ouster of the other cotenants. Campbell v. Dedeaux, 386 So.2d 713, 715 (Miss. 1980); Kennedy v. Bryant, 252 So.2d 784, 788 (Miss. 1971); Quates v. Griffin, 239 So.2d 803, 810 (Miss. 1970). An ouster cannot be proved merely by acts which are consistent with an honest intent to acknowledge the rights of the cotenant. Cheeks v. Herrington, 523 So.2d 1033, 1036 (Miss. 1988), citing Monaghan v. Wagner, 487 So.2d at 819. The evidence of knowledge of an ouster must be clear and convincing. Gavin v. Hosey, 230 So.2d at 573.
M.L. never claimed the first 19 1/2 acre tract bought by Nellie; therefore, the claim of adverse possession applies only to the second 19 1/2 acre tract and the 40 acre tract they purchased together. The testimony in this case is that for the most part M.L. had a good relationship with Nellie's children, though it is indicated they argued over the land on at least two occasions. M.L. did not exclude the children from the land nor did he give notice to them that he claimed the property as his own. Everette moved onto the property and cleaned up an old house which had been used as a corn crib. He worked on the property by helping to farm it, maintaining its fences, harvesting pecans, and building a pump shed. It was not strange that Everette moved onto the property because he had lived there for most of his life and some of the children had lived on the property on occasion. Everette and M.L. paid the taxes on the property. M.L. felt that the 20 acres bought by Nellie alone belonged to her children, but that the 60 acres were his.
This evidence does not establish that Nellie's children were ousted from the property. There is no indication that M.L. or Everette made a claim to the property, nor were their actions of such a nature as to give the other cotenants actual knowledge that they were claiming the property as their own to the exclusion of the rights of the other cotenants.
However, Everette asserts that M.L.'s act of conveying the entire 60 acres to Maxine Parks was an act of ouster. Everette cites Boyd v. Entrekin, 209 Miss. 51, 45 So.2d 848 (1950), to support this position. In Boyd, a mother and her children were cotenants. The property was sold as a result of a foreclosure on a deed of trust. The property was then purchased by a third party and sold back to the mother. This conveyance was recorded. This Court found that under the circumstances the act of recording a deed was an act of ouster. Id. at 57, 45 So.2d 848. This Court held the exact opposite in Nichols v. Gaddis & McLaurin, Inc., 222 Miss. 207, 75 So.2d 625 (1954). In Nichols, this Court stated:
We do not think that the mere recording alone of a fee simple deed by a cotenant "imparts notice" to other cotenants *816 of an adverse claim to land by the grantee-cotenant, and do not think that "this is as effectual for setting the statute in motion as actual notice would have been," as was held in Peeples. This ignores the nature of the relationship of tenants in common, and in fact that a tenant in common out of possession is entitled to assume that a cotenant in possession holds for all cotenants, until he is given knowledge to the contrary, or the equivalent thereof, which must be shown by clear and convincing evidence. As was said in Hulvey v. Hulvey, 92 Va. 182, 23 S.E. 233 (1895), "No one is required to watch the clerk's office to see that those in possession of property in privity with him or in subordination to his title are not acquiring rights adverse to him."
Id. at 231, 75 So.2d 625.
Nichols was modified in Quates v. Griffin, 239 So.2d 803 (Miss. 1970), on petition for rehearing. There this Court stated that for a deed to a third party by a cotenant to constitute ouster, the execution of the deed conveying the entire interest in fee simple must be to one then a stranger to the title, the deed must be recorded, and there must be entry by the grantee claiming the interest in the property. Id. at 812. Quates was explained in Johnstone v. Johnson, 248 So.2d 444 (Miss. 1971). It applies only to ouster by "strangers" who obtained title to land from a cotenant and it did not change Nichols as ouster between related cotenants who are not strangers to the title. Id. at 448.
Whether Maxine Parker is viewed as a stranger to title or as a cotenant with M.L., the conveyance of the 60 acres would not operate as an ouster. The deed to Maxine Parker was recorded. However, other than the recording of the deed Maxine did not exert any ownership or control over the property to claim it as her own. In fact, Maxine conveyed her interest back to M.L. after she and M.L. were divorced. The recording of the deed alone is not sufficient notice of a claim to the property to establish ouster of the other cotenants.
In light of the foregoing, M.L. and Nellie's heirs, including Everette, were cotenants in the 60 acres of land. This made the entire 60 acres subject to partition. The chancellor found that Everette adversely possessed 10 acres of the property. However, for this to be true there would have to have been an ousting of the other cotenants from those 10 acres. Everette's actions were not sufficiently inconsistent with cotenancy to establish that he was claiming the property exclusively as his own. Therefore, the chancellor could not have found that Everette adversely possessed the 10 acres without finding that he adversely possessed the entire 60 acres. It seems as though the chancellor was simply trying to allow Everette to maintain his home; however, in this case it is all or nothing. The evidence does not support the finding that Everette possessed the property in such a way as to oust the other cotenants and establish adverse possession. The chancellor erred in granting Everette 10 acres by adverse possession, but properly found that no ouster of cotenants had occurred to find adverse possession of the 60 acres in M.L. Walley and Everette Warren.
There is substantial support for the chancellor's finding that the deed was a forgery. The Aepplis were cotenants in the 60 acres of land with M.L. Walley. Though Walley was in sole possession of the property, his actions, including the deeding of the land to Maxine Parker, did not rise to the level of an ouster of the other cotenants. The actions of Walley and Everette Warren were not inconsistent with cotenancy, and did not give the other cotenants unequivocal notice of an adverse claim on the property. Therefore, Everette could not have received title even to 10 acres of the land, as his actions were not inconsistent with cotenancy. The chancellor was in error when he found that Everette Warren adversely possessed 10 acres of the land, and this part of his finding must be reversed.
We, therefore, affirm the chancellor on his finding that the deed was a forgery. We reverse the chancellor's finding that Everette Warren adversely possessed 10 *817 acres of the land and remand this case to the Chancery Court of George County so that a partition may be made of all the real property consistent with this opinion.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.