# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00472-SCT

*JOHNNY HUGGINS AND JUDY RAGLE HUGGINS*

*v.*

*TOMMY WRIGHT AND WANDA WRIGHT*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/1997 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHN A. FERRELL, P.A. |
| ATTORNEY FOR APPELLEES: | JOEY M. COBB |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 12 /21/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/11/2001 |

**BEFORE PRATHER, C.J., MILLS AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Johnny and Judy Ragle Huggins filed a complaint requesting the Tishomingo County Chancery Court to establish the boundary line between their property and the adjacent property owned by Tommy and Wanda Wright. The complaint also requested that the court establish an easement across the Wrights' property for ingress/egress by the Hugginses and for utilities. The court found that the Hugginses were entitled to an easement by necessity for ingress/egress and utilities, and that it should be 25 feet in width and located in the old roadway which then existed across the Wrights' property. The court further found that if the Wrights determined that the existing roadway location was onerous and objectionable, the Wrights had the option to relocate the easement to a place of their choosing, entirely at their expense. The court denied all other relief requested.

¶2. Although they agreed with the grant of the easement, the Hugginses appealed to this Court from the chancery court's decision, presenting the following two issues for our consideration:

> **I. WHETHER OR NOT THE CHANCELLOR ERRED IN ALLOWING THE APPELLEES THE OPTION OF RELOCATING THE EASEMENT FROM WHERE IT HAD BEEN FOR MANY DECADES.**

> **II. WHETHER OR NOT THE CHANCELLOR ERRED IN FAILING TO AWARD APPELLANTS DAMAGES FROM APPELLEES FOR THE INTENTIONAL**

**INFLICTION OF EMOTIONAL DISTRESS AND ATTORNEY'S FEES.**

¶3. The Wrights agreed that the Hugginses are entitled to an easement but filed a cross-appeal objecting to the location, size and purpose of the easement, and to the location of the boundary line. The four issues presented for our review on cross-appeal have been combined into one, as follows:

> **III. WHETHER OR NOT THE CHANCELLOR'S DECISION REGARDING THE LOCATION, SIZE, AND PURPOSE OF THE EASEMENT AND THE LOCATION OF THE SECTION LINE WAS CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED.**

¶4. Finding no error, we affirm the chancellor's decision.

## STATEMENT OF THE FACTS

¶5. The Wrights and the Hugginses are owners of certain adjacent tracts of land located in Tishomingo County, Mississippi. The Wrights acquired their five acre tract two months after the Hugginses' 110 acre tract was acquired. The Wrights acknowledged that the Hugginses would need an easement. However, when the local power company required the Hugginses to have a written and recorded utility easement 40 feet wide in order to supply electrical power to the Hugginses' tract of land, the Wrights refused to grant the easement because they did not like the location and size of the 40 foot easement. The Hugginses had understood that the easement would be for ingress/egress and utilities, and that it would be located over the old road bed that had been used for many years to get in and out of the Hugginses' tract. The Wrights offered to relocate the easement but the Hugginses declined to accept the offer. After the Wrights refused to grant the easement across the old roadway, the Hugginses had the electrical service line run across the property of another adjoining neighbor. At the time of trial, the Hugginses still did not have water to their home because the Wrights refused to grant the easement.

¶6. The Wrights also contested the location of the section line between the two properties. Tommy Wright testified that the section line was approximately 90 feet north of where the licensed professional engineer and surveyor had located it.

## STANDARD OF REVIEW

¶7. In appeals from the chancery court, this Court's scope of review is limited. This Court "will not disturb the findings of a chancellor unless he is manifestly wrong or clearly erroneous, or an erroneous legal standard was applied." *Weeks v. Thomas*, 662 So.2d 581, 583 (Miss. 1995) (citing *Jordon v. Warren*, 602 So.2d 809, 812 (Miss. 1992)). "When a chancellor's findings are supported by substantial credible evidence in the record this Court will not reverse." *Id.*

## DISCUSSION

> **I. WHETHER OR NOT THE CHANCELLOR ERRED IN ALLOWING THE APPELLEES THE OPTION OF RELOCATING THE EASEMENT FROM WHERE IT HAD BEEN FOR MANY DECADES.**

¶8. "An easement may be acquired by express grant, implied grant (implication), or prescription, which presupposes a grant to have existed." *Dethlefs v. Beau Maison Dev. Corp.*, 511 So.2d 112, 116 (Miss.

1987). An easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another. *Taylor v. Hays*, 551 So.2d 906, 908 (Miss. 1989). The fact that the dominant and servient estates originated from the severance of a "commonly-owned tract of land" is undisputed in the present case. The parties agree that the Hugginses are entitled to an easement by necessity across the Wrights' five acre tract.

¶9. An easement by necessity requires no written conveyance because it is a vested right for successive holders of the dominant tenement and remains binding on successive holders of the servient tenement. *See Broadhead v. Terpening*, 611 So.2d 949, 954 (Miss. 1992) (implication that the owner of the larger tract would not want to create a landlocked parcel by conveying an interior portion, so it is conveyed whether described or not when the dominant estate is deeded; easements by necessity run with the land and are deeded with each conveyance regardless of description). *See also Pitts v. Foster*, 743 So.2d 1066, 1068 (Miss. Ct. App. 1999).

> A "way of necessity" is an "easement" arising from an implied grant or implied reservation, and it is the result of the application of the principle that whenever a person conveys property, he conveys whatever is necessary for the beneficial use of that property, and retains whatever is necessary for the beneficial use of the land he still possesses. (citations omitted)

> In *Lindsey v. Shaw*, 210 Miss. 333, 340, 49 So.2d 580, 584 (1950), this Court held:

> Where private right of way exists, the owners of the dominant and servient tenements must each use the way in such a manner as not to interfere with one another's utilization thereof. *Feld v. Young Men's Hebrew Association*, 208 Miss. 451, 458, 44 So (2d) 538 [1950].

*Rowell v. Turnage*, 618 So.2d 81, 86 (Miss. 1993).

¶10. The facts of this case are analogous to the facts found in *Taylor v. Hays*, 551 So.2d 906 (Miss. 1989). In *Taylor*, this Court affirmed the lower court's decree which allowed a substituted easement to be provided according to the order of the court and at the expense of the holder of the servient tenement who requested that the easement be relocated. *Id.* at 909-10. The Court found that the holders of the dominant tenement had an easement by necessity, arising by implication, and had not provided any evidence that would indicate that a loss, decrease in value, or even inconvenience would be incurred by a substitution or relocation of the easement. *Id*. The Court limited its holding to the particular facts of the case and specifically stated in a footnote that the holding would not support other circumstances, i.e., when the owner of the dominant tenement would be harmed or caused to sustain a financial loss or a decrease in value to his property. *Id*. at 910. The Court continued and stated that "just any kind of substituted easement might not suffice." *Id*.

¶11. The Wrights claim that they should not be required to pay for the relocation of the easement, citing *Rawls v. Warren*, 227 Miss. 299, 85 So.2d 914 (1956), in which this Court held that a easement relocation expense must be borne by the dominant tenant. Their reliance on *Rawls* is misplaced, however, for there the chancellor found that the servient tenant had a duty to select a reasonable and fair route across his land, and only if the route was fair and reasonable was the expense and cost of constructing and maintaining the way to be placed upon the dominant tenant. *Id.* at 914-15. Rawls, the dominant tenant, was requesting the easement since no roadway existed. The chancellor found the tendered way, as selected by

the servient tenant, to be fair, just and reasonable to all parties. *Id*. at 915. Thus, the cost of constructing and maintaining the way was the duty of the dominant tenant. In **Taylor v. Hays**, there was already in existence a permissive easement with an established roadway that was in use. **Taylor**, 551 So.2d at 908. When the servient land was going to be purchased by a new owner, the new owner stipulated that the purchase would be subject to being able to relocate the easement. The chancellor found that the dominant tenants had an easement by necessity, arising by implication. **Id**. at 908. Since an easement was already in place, the chancellor allowed the servient tenants to move the easement at their own expense in order to accommodate their own needs.

¶12. The chancellor considered all of the testimony and facts of this case and was fair, just and reasonable to all parties in his ruling. He allowed the Wrights the option of relocating the easement, in part because the old existing roadway divides their property in half. We find that there was credible evidence in the record to support the grant of this easement of necessity to be 25 feet and the purpose as stated to be for ingress/egress and for utilities. Although the necessity for a power line easement has ceased to exist, Johnny Huggins testified that he would also need a water line. He acknowledged that it would be his responsibility to run the water line from the meter on the road to his house. The chancellor's ruling was an easement for "utilities;" therefore, other utilities needed by the Hugginses may also be located on this easement.

¶13. If the Wrights decide that the easement for ingress/egress should be located somewhere other than on the old existing roadway, they will incur the expense of the relocation. We find no manifest error in the chancellor's decision on this issue.

### II. WHETHER OR NOT THE CHANCELLOR ERRED IN FAILING TO AWARD APPELLANTS DAMAGES FROM APPELLEES FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND ATTORNEY'S FEES.

¶14. We likewise find no manifest error in the chancellor's decision not to award damages. In their complaint, the Hugginses requested damages for intentional infliction of emotional distress in the amount of $100,000 plus a reasonable amount as attorney's fees and all costs of this action. At trial Mr. Huggins testified that his expenses included over $6,500 in attorney fees and $2,300 for a survey.

¶15. The evidence presented to support the claim of intentional infliction of emotional distress consisted of the fact that the Hugginses had been denied electricity and water; that the Wrights' actions required the Hugginses to obtain an attorney and a preliminary injunction allowing ingress/egress over the driveway; that the Hugginses had to have a survey conducted; and that the Wrights had tried to harass and intimidate the Hugginses.

¶16. The record reveals that the parties discussed the easement, and there was agreement that the Hugginses would have an easement for utilities and ingress/egress. The only disagreement was the location of the easement. There was testimony that the Wrights offered another location to the Hugginses and the offer was rejected. The Hugginses acquired electricity through another neighbor after the Wrights refused to allow the easement for the utilities to be placed where the old road bed was located. The Hugginses now have obtained electricity and once the easement is established, will be able to acquire water. They presently have ingress/egress privileges.

¶17. We affirm the ruling of the chancellor that allows the Wrights the option to relocate the easement. Adequate evidence existed to support the chancellor's finding. Huggins had an opportunity to have the

easement placed in another location and chose to litigate the location of his original understanding. We agree with the chancellor's finding that there was insufficient evidence to support an award for emotional distress.

¶18. As for attorney's fees, this Court has stated that "Mississippi follows the American rule regarding attorney fees: unless a statute or contract provides for imposition of attorney fees, they are not recoverable . . . . When there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper . . . ." *Century 21 Deep South Prop., Ltd. v. Corson,* 612 So.2d 359, 375 (Miss.1992) (citations omitted). Attorney's fees were not proper in the instant case. The parties were simply asserting what each thought in good faith were valid property rights.

¶19. It has generally been held by this Court that unless we are of the firm opinion that the chancellor's decision was incorrect or "manifestly in error," the decision of the chancery court will not be overturned. *Collins ex rel. Smith v. McMurry*, 539 So.2d 127, 129-30 (Miss. 1989). We find no reason to declare that the chancellor's ruling was manifestly in error.

### III. WHETHER OR NOT THE CHANCELLOR'S DECISION REGARDING THE LOCATION, SIZE, AND PURPOSE OF THE EASEMENT AND THE LOCATION OF THE SECTION LINE WAS CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED.

¶20. Having addressed the questions of location, size and purpose of the easement in Issue I, the only remaining question is the location of the section line. We find that the location of the section line should be as established as outlined by the chancellor in his order. Johnny Huggins testified that he asked Tommy Wright about the location of the section line and requested that a surveyor be obtained. He and Wright agreed to each pay ½ of the cost to have the line established. Wright never obtained a surveyor but he did sign the warranty deed conveying the property purchased by Huggins. The deed reflected the description of the southern boundary line and the section line in issue.

¶21. The chancellor found that credible proof was presented by the surveyor who was tendered and accepted as an expert land surveyor and professional engineer. The survey was made using generally accepted surveying principles and was not against the overwhelming weight of the evidence. *Rawls v. Parker*, 602 So.2d 1164, 1170 (Miss. 1992) (where two surveys were tendered and the Court held it was within the chancellor's purview to recognize one survey and reject the other). The Wrights did not offer any expert testimony to establish the section line, but Tommy Wright and Reba Cox, who both were familiar with the land because they had lived there many years, testified that the section line was approximately one hundred feet north of where the surveyor had determined it to be. Wright disagreed with the pin placement, but agreed with the measurements of the surveyor. The surveyor testified that the line established accurately reflected where the section corner was originally located. The record contains substantial evidence to support the chancellor's findings. The chancellor's decision on this issue was not manifestly erroneous.

## CONCLUSION

¶22. After careful review of the Hugginses' appeal and the Wrights' cross-appeal concerning the location, size, and purpose of the easement; the location of the section line; and the denial of damages, we affirm the judgment of the Tishomingo County Chancery Court.

¶23. **AFFIRMED.**

**PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, WALLER AND DIAZ, JJ., CONCUR. PRATHER, C.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**