(38 App. Div. 130.)

### HAMERSHLAG et al. v. DURYEA.

(Supreme Court, Appellate Division, First Department.   March 10, 1899.)

1. VENDOR AND PURCHASER—MARKETABLE TITLE.
    Where a deed from one of two co-tenants contained a covenant of seisin in fee simple of all the premises, and a covenant of warranty of all the title, it was sufficient to convey a marketable title to the grantee, if he showed adverse possession of the land for the required time.

2. SAME—ADVERSE POSSESSION.
    Under Code Civ. Proc. § 370, providing that one claiming title under a written instrument by adverse possession must show either cultivation or improvement or protection by a substantial inclosure, possession under a deed by one of two co-tenants and an inclosure of the property for more than 30 years are insufficient to show that the persons in whom is vested the title of the other co-tenant are barred from insisting on it, so as to render the title marketable.

3. CO-TENANTS—ADVERSE POSSESSION.
    Though one tenant in common grants to a third party the joint premises by a deed conveying his whole interest, the fact that the grantee takes possession is not of itself sufficient to give adverse title against the other tenant, without notice to him, or open acts such as will make the possession of the grantee hostile, exclusive, and notorious.

Appeal from special term, New York county.

Action by Joseph Hamershlag and another against Oscar Duryea. From a judgment for defendant, plaintiffs appeal.   Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William H. Stockwell, for appellants.
George M. Baker, for respondent.

RUMSEY, J.   On the 16th day of October, 1897, the plaintiffs made a contract to buy from the defendant certain premises situate in the city of New York, and to pay $1,000 upon the execution of the contract, and the remainder of the purchase price at the time when the contract was closed; and the plaintiffs paid to the defendant the $1,000.   At the time provided for in the agreement to close the transaction, the parties met; but it was claimed by the plaintiffs that the defendant was not able to give a good title to the premises, and they accordingly refused to go further with it.   The plaintiffs had expended for counsel fees and disbursements in the examination of the title $237.50.   This action was brought to recover from the defendants the $1,000 which had been paid upon the contract, and the $237.50, the amount of expense in examining the title.   The defendant, for a counterclaim, set up substantially that he had a perfect title; that he was ready to perform; that he offered a deed which conveyed a marketable title at the time when the contract, by its terms, was to have been closed, but that the plaintiffs refused to accept a deed, and declined to perform the agreement on their part.   He alleged further that he was then ready to perform the contract, and he asked a judgment of the court for specific performance.   Issue was joined to this counterclaim by a denial of the ability of the defendant to perform, and upon those issues the parties went to trial.   As the result of the trial, the court determined that the defendant's title was good and marketable, and free from all reasonable doubt, and dismissed the complaint, and ordered a judgment for the defendant for the specific performance of the contract as prayed in the counterclaim; and from this judgment the plaintiffs appeal.

It appeared from the testimony that the premises in question were situated on the north side of 113th street, in the city of New York, between the Boulevard and 10th avenue.   It was conceded that one Ely Moore, who was the original source from which the defendant claimed title, had been the owner of the premises.   On the 16th day of November, 1827, Ely Moore conveyed the premises to Thomas Shephard and William Shephard, of the city of New York.   On the 26th of November, 1834, Thomas Shephard and his wife conveyed the premises to the Society of the New York Hospital, by which, on the 2d of May, 1889, the premises were conveyed to the defendant.   There is no proof of any deed or transfer of title by William Shephard, the co-tenant of Thomas Shephard, or anything to show that his interest in the premises was ever actually transferred either to the Society of the New York Hospital or to the defendant; and the plaintiffs claim that this apparent outstanding title in William Shephard in the undivided half of the premises constitutes such a defect as renders the title unmarketable, and justifies them in refusing to accept the conveyance which was tendered to them by the defendant.   The only claim of the defendant is that this interest had vested in the Society of the New York Hospital by adverse possession.   Whether this claim should have been sustained by the learned justice at the special term is the question to be decided.

It appears that the deed of Thomas Shephard to the New York Hospital was, in terms, a conveyance to it of all the premises, and not of

his undivided interest.　In addition, the deed contained a covenant of seisin on the part of Thomas Shephard, to the effect that he was seised of an absolute and indefeasible estate of inheritance in fee simple of all the premises, and a covenant of warranty on his part of the whole title.　It is quite probable that this conveyance, had it been followed by such possession as the statute requires to constitute an adverse holding against one's co-tenant, would have been sufficient to authorize the presumption that the Society of the New York Hospital had acquired good title to these premises.　Florence v. Hopkins, 46 N. Y. 182, 186.　But, where a party claims that he is entitled to a specific performance of a contract by which he agrees to convey lands to another, he is bound to give a marketable title,—one that is free from any doubt that would interfere with the market value. Moore v. Williams, 115 N. Y. 586, 22 N. E. 233.　Such a doubt always exists when, upon the proof, there is an uncertainty as to some fact necessary to sustain the title, which the judgment in the particular action will not establish against the party who is at liberty to assert the fact, so that, as the result of the judgment, it will be conclusive against him.　Vought v. Williams, 120 N. Y. 253, 24 N. E. 195.　To establish the fact that the title was marketable, the defendant here was bound to show, not only that there had been possession of the land for the required time, but that that possession had been of such a nature as to ripen into a title which should be good as against all the world.　Wilhelm v. Federgreen, 2 App. Div. 483, 38 N. Y. Supp. 8. The alleged adverse possession in this case arose under a written instrument.　The statute provides that, to constitute an adverse possession by a person claiming title under such an instrument, the land is deemed to have been possessed and occupied, either where it has been usually cultivated or improved, or where it has been protected by a substantial inclosure.　Code Civ. Proc. § 370.　There was no evidence in this case that the land had been either cultivated or improved, or protected by any inclosure, before the year 1859.　A witness testifies that at that time he knew the premises, and that the grounds of the New York Hospital were always inclosed, to his knowledge.　But it appears from his testimony that his recollection upon that point did not go back beyond about two years before the Civil War.　No other witness attempts to give any statement of a condition of affairs in that regard at an earlier date.　It must be assumed, therefore, that before 1859 no possession had been taken by the Society of the New York Hospital of these premises, such as the statute requires to constitute an adverse possession, and that the hospital did not actually inclose the premises until the year 1859.　That year must therefore be taken as the origin of an adverse possession, if there was any.　It is quite clear that, even if an adverse possession can be said to have commenced then, a sufficient time has not yet elapsed so that it would ripen into a title which should be said to be marketable.　It is no violation of probability to say that the persons in whom are vested the title of William Shephard are not yet barred from insisting upon it, because, in the absence of evidence showing what was the situation and condition of the true owner of the property at the time when the adverse possession against him commenced, it can-

not be said that such possession has ripened into a title until a suffi-·cient time has elapsed to eliminate every probable contingency, the ·existence of which would enable the owner to claim his rights. But, ʼupon the evidence shown here, no adverse possession against William Shephard or his heirs has been made to appear. Although one ten-·ant in common grants to a third party the joint premises by a deed conveying his whole interest, and thereby enabling the grantee to lay the foundation for an adverse possession, yet the mere fact that the grantee takes possession under the deed is not of itself sufficient to begin an adverse possession such as will oust his co-tenant. Be-·fore that can be begun, there must· be notice in fact to the co-tenant that the adverse claim is made, or there must be such open and public ·acts by the adverse claimant as will make his possession so visible, hostile, exclusive, and notorious that notice on the part of the co-ten-·ant of the claim adverse to his right may fairly be presumed. Culver v. Rhodes, 87 N. Y. 348. All that appears in this case is that at a ·certain time the Society of the New York Hospital inclosed these lots by a fence which also included other lands to which it alone had title. The occupation, as is shown, was for purposes of cultivation. Noth-ing appears from which it can be inferred that these particular prem-ises° were put to any use to which any co-tenant might not have put them, or devoted to any purpose inconsistent with the right of any ·one who had a title to them in connection with the Society of the New York Hospital. In no aspect of the case can it be said, there-·fore, that this adverse possession had ripened into such a title that the purchaser should be compelled to accept it.

For these reasons the judgment was erroneous, and must be re-versed, and a new trial ordered, with costs to the appellants to abide the result of the action. All concur.