OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Must a tenant-in-common in exclusive possession (who has not ousted the nonpossessory cotenant), under RPAPL 541, possess for 10 years, or for 20 years, before acquiring full title by adverse possession? Describing RPAPL 541 as an “unclear statute” and a “perennial mind-buster,” the Practice Commentaries speculate that perhaps one day the Court of Appeals will answer this long-standing question (Meehan, Practice Commentaries, McKinney’s Cons Laws of NY, Book 49½, RPAPL 541, 1998 Cum Ann Pocket Part, at 37). That day has come: 20 years.
 

 I.
 

 In 1959, Aston Bartholomew and Julia Craft, as tenants-in-common, acquired title to a two-family residence on Bushwick
 
 *632
 
 Avenue in Brooklyn. From 1959 to 1974, they each occupied a portion of the ground floor unit, renting out the second apartment. When Julia Craft married plaintiff Charles Alexander Myers in 1974, she moved out of the apartment, leaving Aston Bartholomew as its sole occupant. Bartholomew continued to reside in the apartment until his death in 1979, when title to his undivided one-half interest in the house passed by intestacy to defendants — his wife, Thelma Bartholomew, and three daughters, Winifred, Zina Ann and Tisa Celia Bartholomew — as tenants-in-common.
 

 Shortly after Aston Bartholomew’s death, plaintiff and Julia Craft moved into the ground floor apartment of the Bushwick Avenue residence. They lived there together until Julia Craft died in January 1980. Upon her death, title to Craft’s undivided one-half interest passed by intestacy to plaintiff as a tenant-in-common and he continued residing in the apartment. According to plaintiff, since Craft’s death he has been in exclusive possession of the house, has paid all expenses associated with the house, including taxes, insurance and maintenance costs, and has collected rent from tenants who have occupied the second apartment.
 

 In July 1993 — more than 13 years after he assumed exclusive possession — plaintiff brought this action against defendants, seeking to establish his title by adverse possession. Supreme Court denied his unopposed motion for summary judgment on the ground that, under section 541 of the Real Property Actions and Proceedings Law, his claim of adverse possession required a period of 20 years of exclusive possession. The Appellate Division modified, awarding summary judgment to defendants on the same basis articulated by the trial court, and dismissed the complaint.
 

 Given the undisputed fact that plaintiff has possessed the premises for less than 20 years, and no ouster is claimed, resolution of the law question determines this case. Like both courts before us, we conclude that, absent ouster, the period required by RPAPL 541 is 20 years of continuous exclusive possession before a cotenant may acquire full title by adverse possession, and we therefore affirm the Appellate Division order.
 

 II.
 

 Under the common law, tenants-in-common have long been afforded a measure of extra protection from adverse possession claims asserted by their cotenants. In a tenancy-in-common,
 
 *633
 
 each cotenant has an equal right to possess and enjoy all or any portion of the property as if the sole owner. Consequently, nonpossessory cotenants do not relinquish any of their rights as tenants-in-common when another cotenant assumes exclusive possession of the property. Therein lies the danger: while a nonpossessory cotenant seemingly has nothing to fear from another cotenant’s exclusive possession, such possession could conceivably form the basis of an adverse possession claim against the unsuspecting nonpossessory cotenant, who would have had no reason even to protest the purportedly adverse possession
 
 (Edwards v Bishop,
 
 4 NY 61).
 

 In New York, nonpossessory cotenants are protected from this inherent danger by a common-law rule that presumes a cotenant’s possession is possession by and for the benefit of all other cotenants
 
 (Florence v Hopkins,
 
 46 NY 182, 186). Because of this presumption, a tenant-in-common seeking to assert a successful claim of adverse possession is required to show more than mere possession; the cotenant must also commit acts constituting ouster
 
 (Culver v Rhodes,
 
 87 NY 348, 353-355;
 
 Florence v Hopkins,
 
 46 NY 182, 186,
 
 supra).
 
 Although actual ouster usually requires a possessing cotenant to expressly communicate an intention to exclude or to deny the rights of cotenants, the common law also recognizes the existence of implied ouster in cases where the acts of the possessing cotenant are so openly hostile that the nonpossessing cotenants can be presumed to know that the property is being adversely possessed against them.
 

 Determining when there has been an implied ouster can be a vexing task because cotenants have every right to use the property and any possession, even if exclusive, is presumed to be for all the tenants-in-common. Indeed, the question of when a court should imply an ouster is not easily resolved under the common law
 
 (see, e.g., Berger v Horsfield,
 
 188 App Div 649;
 
 Hamershlag v Duryea,
 
 38 App Div 130).
 

 In an effort to address the difficulties inherent in the application of these common-law principles, the Legislature enacted Civil Practice Act § 41-a, later codified as RPAPL 541. The statute, which embodied the presumption of nonadverse possession, modified the rules for terminating that common-law presumption. In its present form, RPAPL 541 states:
 

 “Where the relation of tenants in common has existed between any persons, the occupancy of one tenant, personally or by his servant or by his ten
 
 *634
 
 ant, is deemed to have been the possession of the other, notwithstanding that the tenant so occupying the premises has acquired another title or has claimed to hold adversely to the other. But this presumption shall cease after the expiration of ten years of continuous exclusive occupancy by such tenant, personally or by his servant or by his tenant, or immediately upon an ouster by one tenant of the other and such occupying tenant may then commence to hold adversely to his cotenant.”
 

 Although RPAPL 541 was intended to inject clarity into the common law by creating a firm statutory period after which the presumption of nonadverse possession would terminate, the statute has for many years divided courts and fueled debate among legal scholars. The primary complaint is that section 541 does not plainly indicate when the presumption of nonadverse possession ceases and the adverse possession period begins to run
 
 (see, e.g.,
 
 Meehan, Practice Commentaries,
 
 op. cit.,
 
 at 37; de Winter and Loeb, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 49½, RPAPL 541, 1998 Cum Ann Pocket Part, at 36-37; 13 Warren’s Weed, New York Real Property, Tenants in Common, § 5.02 [4th ed]).
 

 Some argue that the 10-year presumption specified in section 541 can be rebutted with a factual showing of adverse possession. Under this view, a cotenant’s 10-year period of exclusive possession runs concurrently with the 10-year Statute of Limitations period applicable to adverse possession claims
 
 (see, e.g., Article Ten Props. v Kocak,
 
 164 AD2d 448 [3d Dept];
 
 Porter v Marx,
 
 179 AD2d 962 [3d Dept]).
 

 Others contend that the presumption is irrebuttable: unless there is ouster, a cotenant’s exclusive possession can be considered adverse only after the cotenant has been in exclusive possession for 10 years. Under this view, RPAPL 541 requires a cotenant to possess exclusively for two consecutive 10-year periods, or 20 years, before asserting a claim of adverse possession
 
 (see, e.g., Kolb v Anisis,
 
 104 AD2d 399 [2d Dept];
 
 Perez v Perez,
 
 228 AD2d 161 [1st Dept],
 
 Iv dismissed
 
 89 NY2d 917;
 
 see also, Palmer v McCormick,
 
 204 AD2d 522 [2d Dept];
 
 Pravato v M.E.F. Bldrs.,
 
 217 AD2d 654 [2d Dept];
 
 see also,
 
 Comment,
 
 Real Property Actions and Proceedings Law Section 541: The Mind-Buster Busted,
 
 59 Alb L Rev 1485).
 

 Given the language of the statute, particularly when read in light of its history, we conclude that the latter interpretation of RPAPL 541 is the right one. Absent ouster, a cotenant may
 
 *635
 
 begin to hold adversely only
 
 after
 
 10 years of exclusive possession. RPAPL 541’s statutory presumption, therefore, effectively requires 20 years — or two consecutive 10-year periods — of exclusive possession before a cotenant may be said to have adversely possessed a property owned by tenants-in-common.
 

 Any doubt that this is the proper interpretation of the words of the statute is dispelled by the history of the statute.
 

 Civil Practice Act § 41-a, later codified as RPAPL 541, was adopted by the Legislature in 1949 to address some of the problems stemming from the application of the common-law presumption protecting tenants-in-common. Under the common law, even where there was continuous occupancy by an original tenant-in-common in a manner sufficient to give rise to title by adverse possession, such title was generally considered uncertain and unmarketable because its legitimacy depended upon the resolution of a question of fact — namely, whether there was evidence demonstrating that nonpossessory cotenants, including those missing or unidentifiable, had sufficient notice of the adverse possession to permit a finding of implied ouster (see,
 
 e.g., Berger v Horsfield,
 
 188 App Div 649,
 
 supra
 
 [upholding trial court recognition of defendant’s interest as a tenant-in-common although plaintiff had occupied for 83 years and defendants had, within that period, asserted no right];
 
 Hamershlag v Duryea,
 
 38 App Div 130,
 
 supra
 
 [holding unmarketable the title of a grantee by warranty deed from a possessory tenant-in-common where there was no evidence as to what became of another tenant-in-common even though there had for 40 years been possession hostile to the claim of the missing cotenant]).
 

 Civil Practice Act § 41-a sought to minimize the uncertainty of title plaguing possessory tenants-in-common who had adversely possessed for many years, while also preserving the presumption of nonadverse possession that had been created to protect nonpossessory cotenants. The statute achieved this balance by providing for another means, in addition to ouster, for terminating the presumption: namely, 15 years of continuous occupancy by the tenant occupying the premises, personally, or by his servant or by his tenant. This 15-year presumption was intended to run consecutively to the 15-year limitations period applicable to adverse possession claims at that time. The legislative history makes that clear:
 

 “Under the bill, upon the expiration of fifteen years of continuous occupancy by one tenant (personally
 
 *636
 
 or by his servant or by his tenant) this presumption would end. The possession of the occupying tenant might in actual fact be with the permission of his cotenants, or it might, under the rules generally applicable to adverse possession, be adverse. If it
 
 were in fact adverse,
 
 and should continue so for a fifteen year period after the expiration of the presumption, the claim of other tenants in common, out of possession, would be barred, unless within the second fifteen year period the present owners of such claim came forward and asserted it as they would have to do in a case where there never had been a relation of tenancy in common [emphasis in original].” (Mem of Executive Secretary and Director of Research of NY Law Rev Commn, Bill Jacket, L 1949, ch 184.)
 

 In 1962, Civil Practice Act § 41-a was recodified as RPAPL 541. Although RPAPL 541 reduced the presumption period to 10 years, it was otherwise identical to Civil Practice Act § 41-a. Following its enactment, however, a number of New York courts misconstrued and misapplied section 541. In
 
 Graham v Graham,
 
 for example, Supreme Court held that RPAPL 541’s “presumption is not intended to add directly to the limitations already existing but is a presumption of fact limited to run from the beginning of proof of actual continuous occupancy by one tenant in common in the manner described in the section, and to that extent, concurrently with the statutory adverse possession required as to third parties and not consecutively” (45 Misc 2d 298, 303;
 
 see also, Marchese v Marchese,
 
 78 Misc 2d 690).
 

 The Legislature responded in 1975 by amending the statute, making clear that the presumption is not merely a rebuttable one. A side-by-side comparison of the old and new statutory language is instructive. When it was first enacted in 1962, the final sentence of RPAPL 541 read:
 

 “But this presumption shall
 
 not be made
 
 after the expiration of ten years of continuous occupancy by such tenant, personally or by his servant or by his tenant, or
 
 after
 
 an ouster by one tenant of the other [emphasis added].”
 

 The 1975 amendment, however, reads:
 

 “But this presumption shall
 
 cease
 
 after the expiration of ten years of continuous
 
 exclusive
 
 occupancy
 
 *637
 
 by such tenant, personally or by his servant or by his tenant, or
 
 immediately upon
 
 an ouster by one tenant of the other
 
 and such occupying tenant may then commence to hold adversely to his cotenant
 
 [emphasis added]
 

 The new language was plainly intended to resolve any perceived ambiguity in the original statute and make clear that a cotenant must have exclusive possession for 10 years before the statutory adverse possession period could even begin to run.
 

 Indeed, the Bill Jacket accompanying the 1975 amendment is replete with explicit statements to that effect
 
 (see, e.g.,
 
 Letter from Minority Leader to Minority Senate, Bill Jacket, L 1975, ch 375 [“This bill would make clearer the intent and purpose of the statutes which mandate that the 10 year adverse possession period should be added to the time period of nonadverse possession before title can be perfected by such concept”]; Mem of NY Law Rev Commn, Bill Jacket, L 1975, ch 375 [intent of amendment is to make clear that “the ten year adverse possession time period provided in CPLR 212, subd. a is added to the time period of nonadverse possession before there can be perfecting of title by adverse possession”]).
 

 Additionally, throughout the Bill Jacket, cases such as
 
 Graham v Graham
 
 and
 
 Marchese v Marchese
 
 are specifically identified as having been wrongly decided
 
 (see, e.g.,
 
 Mem of Comm on State Legislation of Bar Assn of City of NY, Bill Jacket, L 1975, ch 375 [cases such as
 
 Graham
 
 and
 
 Márchese
 
 have “misinterpreted (section 541) to mean that no more than the slated period is required to establish adverse possession against a tenant in common, thus affording such tenant no greater protection against loss of title by adverse possession to a cotenant than to a stranger”]; Recommendation of NY Law Rev Commn to 1975 Legislature, Relating to Presumption of Nonadverse Possession of Tenants and Tenants in Common, Bill Jacket, L 1975, ch 375
 
 [Graham v Graham
 
 and other cases adopting similar interpretations of section 541 were erroneous decisions, as “(t)itle by adverse possession should not arise from mere exclusive possession by a cotenant for the ten year period fixed by the statute of limitation”]).
 

 Holding RPAPL 541 to create merely a rebuttable presumption, finally, would be to obliterate the very purpose of establishing the presumption, which was to give tenants-in-common an extra measure of protection against claims of adverse possession by their cotenants. If the two terms were
 
 *638
 
 concurrent, a nonpossessory cotenant would be in virtually the same situation as any other landowner defending against a stranger’s claim of adverse possession; in either case, title by adverse possession would be acquired after the first 10 years of open and hostile possession.
 

 In sum, a simple conclusion emerges from the mists: absent ouster, the period required by RPAPL 541 is 20 years of continuous exclusive possession before a cotenant may be said to acquire full title by adverse possession.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.