**VIOLET SEWER MAHABIR, Appellant/Plaintiff**

**v.**

**HEIRS OF JAMES WELLINGTON GEORGE, ANNA MARIA GEORGE born Wilson, EMILE ROBERTS born George, ALFRED VICTOR LAMBERTUS, WILLIAM D. GEORGE, included but not limited to Heirs of BEULAH BATTISTE, Heirs of EARL CHRISTIAN, Heirs of MONROVIA GEORGE WELLS, CARMEN REYES, MARY FLORES, and anyone else claiming any right, title, estate, lien, or interest in Parcel No. 6ab Estate Hansen Bay A, East End Quarter, St. John, Virgin Islands, as shown on PWD No. A9-282-T80, Appellees/Defendants**

S. Ct. Civil No. 2014-0025

Supreme Court of the Virgin Islands

September 25, 2015

651

SUSAN B. MOOREHEAD, ESQ., Smock & Moorehead, St. Thomas, USVI, *Attorney for Appellant.*

KARL R. PERCELL, ESQ., The Percell Legal Group, P.C., St. Thomas, USVI, *Attorney for Mary Flores, Heirs of Beulah Battiste, Heirs of Earl Christian, Heirs of James Wellington George, Heirs of Monrovia George Wells, and Carmen Reyes, Appellees.*

MARIA T. HODGE, ESQ., Hodge & Hodge, St. Thomas, USVI, *Attorney for Martha George and Wilmar Corporation, Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 25, 2015)

CABRET, *Associate Justice.* Violet Sewer Mahabir appeals from the Superior Court's orders dismissing her claim of exclusive title to a property on St. John through adverse possession and ordering her to pay attorney's fees to the opposing parties. Following a bench trial, the Superior Court held that Mahabir failed to establish the elements of adverse possession by clear and convincing evidence. We affirm the Superior Court's holding that Mahabir failed to establish adverse possession but remand the record solely to allow the Superior Court to clarify its attorney's fees awards.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1913, James Wellington George, Anna Maria George, Emilie Roberts, Alfred Victor Lambertus, and the heirs of William D. George — all property owners on the east end peninsula of St. John[1] — signed an agreement setting out their respective interests in several properties in Estate Hansen's Bay. This agreement created a tenancy in common in Parcel 6AB, granting the heirs of James Wellington George a two-sixths

---

[1] *See Malloy v. Reyes*, 61 V.I. 163, 168 (V.I. 2014) (map depicting St. John's east end peninsula).

interest in the property, Anna Maria George's heirs a one-sixth interest, those of Emilie Roberts a one-sixth interest, those of Alfred Victor Lambertus a one-sixth interest, and William D. George's heirs a one-sixth interest.

In 1979, Violet Sewer Mahabir, an heir of Emilie Roberts, returned to St. John to discover Parcel 6AB largely abandoned and littered with debris and abandoned cars. The road connecting the east end peninsula of St. John with the rest of the island was paved the year before, resulting in more traffic — which Mahabir took advantage of by selling cold drinks to tourists on the side of the road, eventually saving enough money to build a permanent structure, "Vie's Snack Shack," in 1980. After she built the Snack Shack, she noticed that people were squatting on the beach on Parcel 6AB and started evicting them, informing these people that Parcel 6AB was not part of the Virgin Islands National Park.[2] She then cleaned the property, removed the debris, and authorized the Virgin Islands Department of Public Works to remove the abandoned cars. She also posted "private property" and "no trespassing" signs and blocked the entrance to the beach with a chain. By 1983, she started operating the property as a campground, charging campers a fee and renting out tents and other camping supplies. In 1986, Mahabir placed four plywood platforms on the property for campers to pitch their tents on, along with two outhouses and water tanks. After Hurricane Hugo destroyed or severely damaged these structures in 1989, Mahabir replaced them and fenced the property with barbed wire.

Originally, part of the campground Mahabir operated extended onto neighboring Parcel 6E, another property divided by the 1913 agreement. The heirs of William D. George — who numbered 37 descendants at the time of trial in this case — formed the Wilmar Corporation in the 1980s to manage their interest in the Estate Hansen Bay properties, including Parcels 6AB and 6E, and sold their interest in Parcel 6E as part of a settlement agreement in 1988.

In 1999, the purchasers of Parcel 6E brought an action for trespass and quiet title against Mahabir in the United States District Court of the Virgin Islands to stop her from operating her campground on a portion of Parcel

---

[2] The Virgin Islands National Park is a United States National Park that covers over half of the island of St. John. *See* 16 U.S.C. §§ 398-398f.

6E. *Netsky v. Sewer*, 205 F. Supp. 2d 443 (D.V.I. 2002). Mahabir filed a *pro se* response in that case in 2000, arguing that the portion of Parcel 6E her campground was located on was actually part of Parcel 6AB, and that she had an interest in the property by adverse possession because of her "continuous and notorious use of the property in controversy" since at least 1982. But the District Court granted summary judgment to the purchasers on this claim, holding that Mahabir "fail[ed] to establish by clear and convincing evidence that she has had exclusive, continuous, and uninterrupted possession of a portion of Parcel 6E over the required statutory period of fifteen years" under 28 V.I.C. § 11. *Netsky*, 205 F. Supp. 2d at 459-60. On appeal, the United States Court of Appeals for the Third Circuit affirmed the District Court. *Netsky v. Sewer*, Nos. 02-2536, 02-2537, 02-2696, 2003 U.S. App. LEXIS 23046 (3d Cir. Oct. 29, 2003) (unpublished).

Sometime in 2008 or 2009, two women claiming to be related to Mahabir entered Parcel 6AB and refused to leave, claiming they had an interest in the property. The police were called to the scene, but the women kept returning to the property, insisting they had the right to use it. Then, on May 8, 2009, Mahabir filed a complaint in the Superior Court of the Virgin Islands seeking quiet title by adverse possession in Parcel 6AB against the other beneficiaries of the 1913 agreement, including Wilmar Corporation and the heirs of James Wellington George, Anna Maria George, Emilie Roberts, and Alfred Victor Lambertus, who are referred to here collectively as the "Heirs of George," and were represented at trial (as they are in this appeal) by a single attorney.

After denying cross-motions for summary judgment, the Superior Court held a two-day bench trial beginning on October 7, 2013. During trial, Mahabir presented the testimony of Sharon Kaucher, who stayed at the campground in the 1980s; the testimony of Mahabir's children, Jasmine Joy, Kharid Wallace, and Cleve Mahabir; and that of Carol Beckowitz, who lives on a property neighboring Parcel 6AB. These witnesses testified regarding Mahabir's operation of the Snack Shack and campground on the property; her efforts to control the property by removing trespassers, fencing in the property, and posting signs; as well as her efforts to provide tent platforms and outhouses on the property for use by the campers.

Finally, Mahabir herself testified. During her testimony, Mahabir recounted her return to St. John in 1979 and the subsequent development

of her business on Parcel 6AB. She stated that in 1996, she learned through a notice published in the newspaper that the Government was going to sell Parcel 6AB in a tax auction to satisfy delinquent taxes going back to 1988. She arranged to pay the delinquent taxes in order to avoid the tax sale, and began making payments in 1998, paying the property taxes until Mary Flores — an heir of James Wellington George — had the Government forward the tax bills for the years 2006 to 2009 to her.

After this testimony, Mahabir rested, and the defendants moved for a directed verdict, arguing that the adverse possession claim must fail because Mahabir had made no "substantial permanent improvements to the property." The Superior Court reserved decision on this motion and allowed the defendants to present their case. The defendants presented the testimony of Khalid Nadir, the president of Wilmar Corporation, Mahabir's brother Irvin Sewer, Leayle Battiste and Lorne Battiste, heirs of James Wellington George who were familiar with the properties of Estate Hansen's Bay, and Thalia Reyes, who lived on the neighboring Parcel 6T at the time of trial. After this testimony, Mahabir testified again in rebuttal, and the parties rested.

In a December 12, 2013 opinion and order, the Superior Court dismissed Mahabir's adverse possession claim with prejudice. In its opinion, the Superior Court credited all of the witnesses' testimony, noting that there was no conflicting testimony on any relevant factual issue in the case. The Superior Court then held that Mahabir failed to establish that her possession of the property was hostile to the interests of her cotenants, finding that she "did not clearly indicate to [her cotenants] that she was dispossessing them of their property interests and claiming title to the property." Following the judgment, Wilmar Corporation moved for attorney's fees on December 17, 2013, Mahabir filed a motion for reconsideration on December 27, 2013, and on February 5, 2014, the Heirs of George also moved for an award of attorney's fees.

The Superior Court denied the motion for reconsideration on March 24, 2014. *Mahabir v. Heirs of George*, Super. Ct. Civ. No. 231/2009 (STT), 2014 V.I. LEXIS 16 (V.I. Super. Ct. Mar. 24, 2014) (unpublished). The court then awarded attorney's fees to Wilmar Corporation and the Heirs of George in two orders entered on April 8, 2014. *Mahabir v. Heirs of George*, Super. Ct. Civ. No. 231/2009 (STT), 2014 V.I. LEXIS 20 (V.I. Super. Ct. Apr. 8, 2014) (unpublished).

Mahabir filed a timely notice of appeal on April 14, 2014, appealing the December 12, 2013 order dismissing her claim with prejudice and the March 24, 2014 order denying reconsideration of that ruling,[3] as well as the orders awarding attorney's fees. *See* V.I.S.CT.R. 5(a)(4).

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). The Superior Court's December 12, 2013 order dismissing Mahabir's complaint with prejudice after a bench trial was a final judgment under section 32(a), *Malloy v. Reyes*, 61 V.I. 163, 171-72 (V.I. 2014), as were its April 8, 2014 orders awarding attorney's fees to Wilmar Corporation and the Heirs of. George. *Kalloo v. Estate of Small*, 62 V.I. 571, 577 (V.I. 2015) (citing *In re Guardianship of Smith*, 58 V.I. 446, 449 (V.I. 2013)).

## III. DISCUSSION

Mahabir argues on appeal that the Superior Court erred in dismissing her adverse possession claim, asserting that she established all the required elements of adverse possession by clear and convincing evidence. She also insists that the Superior Court erred in awarding attorney's fees to the Heirs of George and Wilmar Corporation. We address each issue in turn.

### A. Adverse Possession

Adverse possession in the Virgin Islands is governed by title 28, section 11 of the Virgin Islands Code, providing that "[t]he uninterrupted, exclusive, actual, physical[,] adverse, continuous, notorious possession of

---

[3] Even though Mahabir included the Superior Court's order denying her motion for reconsideration in the notice of appeal, because she fails to make any arguments concerning this motion in her appellate brief, and we ultimately resolve this appeal based on a *de novo* review of the underlying order that was the subject of the motion for reconsideration, we do not address the Superior Court's denial of that motion. *In re L.O.F.*, 62 V.I. 655, 659 n.5 (V.I. 2015); *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 407-08 (V.I. 2008) (declining to address arguments regarding the denial of a motion to reconsider after reversing the underlying order); *see also Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 548 (6th Cir. 2007) ("We do not address the order denying [the] motion for reconsideration, as our decision as to the first order renders that issue moot.").

real property under claim or color of title for 15 years or more shall be conclusively presumed to give title thereto, except as against the Government." The party asserting adverse possession bears the burden of proving all the required elements by clear and convincing evidence. *Simpson v. Golden Resorts, LLLP*, 56 V.I. 597, 606 (V.I. 2012) (quoting *Hodge v. McGowan*, 50 V.I. 296, 315 (V.I. 2008)).

Mahabir argues on appeal that she met this burden by showing that she was the only person paying taxes on the property from 1988 until 2005, that she openly operated a business and campground on the property since 1986, and that she collected fees and rent without accounting to her cotenants. The Superior Court held that Mahabir failed to establish that her possession was adverse — or, in other words, hostile to the interests of her cotenants — and since this alone was fatal to her case regardless of her showing on the other factors, the Superior Court did not address the remaining elements. We apply plenary review to the Superior Court's legal determination that the undisputed facts failed to establish that Mahabir's possession of the property was adverse. *Malloy*, 61 V.I. at 173 (citing *Brunn v. Dowdye*, 59 V.I. 899, 904 (V.I. 2013)).

█ As Virgin Islands courts have explained many times in the past, "there is no fixed rule or mechanical formula [to] determine if possession is hostile." *McNamara v. Christian*, 26 V.I. 109, 112 (V.I. Super. Ct. 1991) (citing *Tutein v. Daniels*, 10 V.I. 255, 260 (D.V.I. 1973)); *see also Sasso v. Hackett*, 45 V.I. 375, 384 (V.I. Super. Ct. 2004) (quoting *DeCastro v. Stuart*, 43 V.I. 115, 122 (V.I. Super. Ct. 2000)); *Andrews v. Nathaniel*, 42 V.I. 34, 39 (V.I. Super. Ct. 2000); *Fleming v. Frett*, 33 V.I. 58, 61 (V.I. Super. Ct. 1995); *Cakebox Bakery, Inc. v. Maduro*, 15 V.I. 283, 289 (V.I. Super. Ct. 1978). Because of the "harsh consequences . . . faced by the record owner, the statutory requirements . . . are specifically calculated to give the record owner notice that someone else is claiming title to the property." *Blumrosen v. St. Surin*, 36 V.I. 3, 8 (V.I. Super. Ct. 1995) (citing *McNamara*, 26 V.I. at 111). And "[w]here the occupier has not acted to give effective notice of his occupation, the court will not bar the record owner from seeking recovery of the property." *Id.* (citing *McNamara*, 26 V.I. at 114-15). Thus, "[i]t would seem that the intention of the [adverse possessor], adequately communicated (either constructively or actually) to the record titleholder, is the crucial element." *Tutein*, 10 V.I. at 260.

■ The evidence required to satisfy this "crucial element" is different in this case than in most adverse possession actions, because — unlike in the typical adverse possession action between strangers — the parties in this case share an interest in the property as tenants in common. Mahabir is already the record titleholder to the property, along with the Heirs of George and Wilmar Corporation, who share the property as tenants in common as heirs of the parties to the 1913 agreement. *See* 28 V.I.C. § 8 ("[W]hen an inheritance or a share of an inheritance descends to several persons they shall . . . take as tenants in common, in proportion to their respective rights.");[4] *Newfound Mgmt. Corp. v. Sewer*, 885 F. Supp. 727, 745 (D.V.I. 1995) (explaining that the heirs of the parties to the 1913 agreement are tenants in common with respect to the properties divided by the agreement), *aff'd sub nom. Newfound Mgmt. Corp. v. Lewis*, 131 F.3d 108, 37 V.I. 612 (3d Cir. 1997).

■ Because each tenant in common has an equal right to possession of the entire property, and the "innate right . . . to use the land to [her] benefit," *Ottley v. Estate of Bell*, 61 V.I. 480, 499 (V.I. 2014), "[i]t is a universal principle of law that the possession of one cotenant is the

---

[4] In addition to 28 V.I.C. § 8, the Virgin Islands Code speaks to tenancies in common in several contexts, providing that "[e]very conveyance or devise of lands or an interest therein . . . made to two or more persons . . . shall create a tenancy in common in such estate," unless the conveyance provides that the tenants "shall take the land as joint tenants," or conveys the property "to husband and wife jointly creat[ing] an estate by the entirety." 28 V.I.C. § 7(b)-(c). Although title 28 goes on to define several rights of tenants in common with respect to their cotenants — including the right to a portion of the "rents or profits of the estate," 28 V.I.C. § 7(a), the right of an ousted cotenant to maintain an action against the cotenant in possession, 28 V.I.C. § 291, and the right to equitable partition of the property, 28 V.I.C. § 451 — it does not comprehensively define a tenancy in common or the rights of tenants in common with respect to their cotenants. Despite this, words and phrases in the Virgin Islands Code that "may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning," 1 V.I.C. § 42, and this Court recently explained that "[a] tenancy in common is the joint ownership of real property by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property." *Ottley v. Estate of Bell*, 61 V.I. 480, 498-99 (V.I. 2014) (quoting *George v. George*, 59 V.I. 1092, 1102 (D.V.I. 2013)) (internal quotation marks omitted); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ("[T]he general rule [is] that a common law term in a statute comes with a common law meaning, absent anything pointing another way."); *accord L.O.F.*, 62 V.I. at 661 n.6. And — unlike a joint tenancy or a tenancy by the entirety — a tenant in common lacks a right of survivorship in her cotenants' "equal or unequal undivided shares," with her interest in the property remaining unchanged by the death of a cotenant. *Ottley*, 61 V.I. at 499.

possession of all." *Gov't of the V.I. v. Massac*, 161 F. Supp. 704, 707, 3 V.I. 328 (D.V.I. 1958) (citing *Union Cons. Silver Mining Co. v. Taylor*, 100 U.S. 37, 25 L. Ed. 541 (1879) and 14 AM. JUR. 2D *Cotenancy* § 23), *vacated in part on other grounds by* 277 F.2d 660, 4 V.I. 185 (3d Cir. 1960).[5] As such, there is a "presumption . . . that a cotenant out of possession is in constructive possession." *In re Certain Lot & Parcel of Land Recorded in Names of Campher*, 498 A.2d 1090, 1094 (Del. 1985). This presumption of constructive possession means that a cotenant claiming adverse possession must do more to establish that her use of the property was adverse to the interests of her tenants in common than the plaintiff in the typical adverse possession action against strangers, as "[t]he mere unannounced intention or exclusive possession of one cotenant is not sufficient to support a claim of adverse possession in cases involving tenants in common." *O'Connor v. Larocque*, 302 Conn. 562, 31 A.3d 1, 15 (2011) (citing 3 AM. JUR. 2D *Adverse Possession* § 245 (2002)); *Jordon v. Warren*, 602 So. 2d 809, 815 (Miss. 1992) (the tenant claiming exclusive title to the property by adverse possession must meet the "burden of establishing that the other cotenants were unequivocally ousted by actual notice or conduct equivalent thereto"). And accordingly, "the tenant claiming adversely must actually notify his or her cotenants that he or she is claiming against them." *Wailuku Agribusiness Co. v. Ah Sam*, 114 Haw. 24, 155 P.3d 1125, 1135 (2007).

█ The requirement that a tenant in common claiming adverse possession against her cotenants under 28 V.I.C. § 11 demonstrate that she ousted her cotenants by actual notice or its equivalent is confirmed by

---

[5] *See also Horne v. Cox*, 237 S.C. 41, 115 S.E.2d 513, 515 (1960) ("The occupancy of the common property by one of the cotenants is [presumed to be] entirely consistent with the existence of the cotenancy and a recognition of the rights of the other cotenants to share the possession."); *Myers v. Bartholomew*, 91 N.Y.2d 630, 697 N.E.2d 160, 161, 674 N.Y.S.2d 259 (1998) ("[E]ach cotenant has an equal right to possess and enjoy all or any portion of the property as if the sole owner, [and] nonpossessory cotenants do not relinquish any of their rights as tenants-in-common when another cotenant assumes exclusive possession of the property."); *Apatang v. Mundo*, 4 N.M.I. 90 (1994); *Ward v. Morgan*, 280 Ga. 569, 629 S.E.2d 230, 232 (2006); *Simons v. Tancre*, 321 N.W.2d 495, 498 (N.D. 1982); *Osborn v. Warner*, 694 P.2d 730, 733 (Wyo. 1985); *Wailuku Agribusiness Co. v. Ah Sam*, 114 Haw. 24, 155 P.3d 1125, 1135-36 (2007); *Jordon v. Warren*, 602 So. 2d 809, 814-15 (Miss. 1992) (citing 86 C.J.S. *Tenancy in Common* § 27 (1954)); *In re Certain Lot & Parcel of Land Recorded in Names of Campher*, 498 A.2d 1090, 1094 (Del. 1985); *In re Estate of Duran*, 2003-NMSC-008, 133 N.M. 553, 66 P.3d 326, 330-31 (2003); *O'Connor v. Larocque*, 302 Conn. 562, 31 A.3d 1, 14 (2011).

28 V.I.C. § 291. Section 291, titled "[a]ction by tenant in common," provides the ousted cotenants with a cause of action to recover the property when "the defendant either denied the plaintiff's right [of possession] or did some act amounting to such denial." Since section 291 provides the ousted tenants in common with a cause of action to recover the property only after "the defendant either denied the plaintiff's right [of possession] or did some act amounting to such denial," this same standard must also be satisfied in an adverse possession action between tenants in common in order for the cotenant's possession of the property to be adverse to the interests of her cotenants.

■ If anything less was sufficient to trigger the 15-year adverse possession period, a cotenant in possession of the property could satisfy all the elements of adverse possession under section 11 — and deprive her cotenants of their ownership in the property — long before the cotenants would be able to bring an action to recover the property. When read this way, once the tenant in possession denies the cotenant's right to the property, the ousted cotenant can recover the property under section 291, but if the ousted cotenant fails to bring such an action within 15 years, the tenant in possession may succeed in bringing an adverse possession claim under section 11.

■ Under the standard outlined in section 291, Mahabir's adverse possession claim fails. Mahabir argues in her appellate brief — as she did before the Superior Court — that she established adversity under section 11 through the undisputed evidence that she saved the property from a tax auction, paid the property taxes until 2005, had exclusive possession of the property since the early 1980s, fenced in the property, and made no accounting to her cotenants for the campground profits. But because "a presumption exists that a co-tenant out of possession is in constructive possession," those actions alone are not enough to establish adverse possession against a cotenant. *Campher*, 498 A.2d at 1094; *see also Squires v. Clark*, 17 Kan. 84, 87 (1876) ("The presumption is, that the possession is held in subordination of the rights of co-tenants, and for their benefit."); *Horne v. Cox*, 237 S.C. 41, 115 S.E.2d 513, 515 (1960) ("The occupancy of the common property by one of the cotenants is entirely consistent with the existence of the cotenancy [and] will be presumed to be that of a tenant in common recognizing the cotenancy.").

■ "Mere possession itself and the payment of taxes is presumed to be for the benefit of all tenants in common," *Simons v. Tancre*, 321 N.W.2d

495, 498 (N.D. 1982), and so the "payment of property taxes, maintenance activities such as mowing and cleanup, the planting of trees around the perimeter of the lot" and giving others permission to use the property are actions that are all "entirely consistent with the actions of a tenant in common who shares an interest in the property *without* an intent to dispossess." *O'Connor*, 31 A.3d at 24 (emphasis in original). And even "the appropriation of rents and profits will not constitute adverse possession on the part of a tenant in common." *Simons*, 321 N.W.2d at 498; *see also Jordon*, 602 So. 2d at 815 ("Evidence of acts by a cotenant not inconsistent with co-tenancy, such as using the land and paying taxes on it, do not constitute an ouster of the other cotenants."); *Newell v. Woodruff*, 30 Conn. 492, 497 (1862) (acts such as paying taxes, collecting rents, occupying and enjoying entire premises are equivocal because they are consistent with right of cotenant to "possess for all and be willing or compelled to account to all"); *cf. Lindsey v. Lindsey*, 249 Ga. 832, 294 S.E.2d 512, 513 (1982) ("[W]here a tenant in common conveys the whole property to a third person who goes into possession under the conveyance claiming the entire lot as his own, this constitutes an ouster of the other tenants.").

Nor does Mahabir's reliance on *Prince v. Duvergee*, 1 V.I. 425 (D.V.I. 1938), change this conclusion. There, the United States District Court of the Virgin Islands — sitting in its former capacity as a local trial court — held that a tenant in common had successfully acquired sole title to the property by adverse possession where "there [was] no evidence that the entry of the [tenant in possession of the property] was hostile to the other [tenants in common], or that the plaintiff . . . ever by direct communication with the[ ] cotenants, asserted an adverse title." *Id.* at 427. Yet the District Court was still able to conclude that the tenant in possession had made a "manifest claim of sole dominion" over the property and noted that the ousted cotenant "has not refuted the evidence of these facts." *Id.* at 427-29. But in this case, there is no evidence that Mahabir made a "manifest claim of sole dominion" sufficient to make her cotenants aware that she was denying their right to the property as required by section 291.

Furthermore, although Mahabir did not make this argument at trial, the Superior Court also noted that Mahabir's answer in the District Court proceedings in *Netsky* could have given her cotenants the required notice that she was claiming an adverse interest in Parcel 6AB since in her

answer, she claimed adverse possession with regard to the portion of Parcel 6E abutting Parcel 6AB. *See O'Connor*, 31 A.3d at 24 ("prior acrimonious litigation" can give notice of possession adverse to cotenants' interests). But the Superior Court correctly held that even if this was sufficient notice, Mahabir filed her answer in that case in 2000, only nine years before she filed this action in the Superior Court — six years shy of the 15-year period required by 28 V.I.C. § 11. And while it appears that Mahabir's attempt to have two of the cotenants removed from the property by police would constitute sufficient notice of Mahabir's denial of her cotenants' interest in the property to support an adverse possession claim, this did not happen until shortly before she filed this action in 2009.

Accordingly, the Superior Court did not err in holding that Mahabir failed to establish that her use of Parcel 6AB was adverse to the interests of her cotenants for the required 15-year period. Because the failure to establish adversity alone is sufficient to defeat Mahabir's claim, we do not address her showing on the other factors required to establish adverse possession under 28 V.I.C. § 11, and affirm the Superior Court's December 12, 2013 order.[6]

## B. Attorney's Fees

Mahabir makes several arguments challenging the Superior Court's orders awarding $6,556.25 in attorney's fees to the Heirs of George, and $12,215.63 in attorney's fees to Wilmar Corporation. Yet — despite her obligation to do so under Supreme Court Rule 15(b) — she fails to cite controlling authority from this Court holding that a motion for attorney's fees filed after the Superior Court issues its final judgment is not ripe for adjudication while an appeal is pending. *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 280-81 (V.I. 2008)

---

[6] Mahabir also asserts that the Superior Court erred in holding that she was required to show that she made improvements to the property to establish adverse possession. "The Superior Court err[s] as a matter of law in requiring the construction of buildings or other improvements to establish the actual possession element of adverse possession." *Simpson*, 56 V.I. at 606. Therefore, the Superior Court erred to the extent that it relied on the lack of improvements to the property in ruling against Mahabir. But since we affirm the Superior Court's holding that Mahabir failed to demonstrate that her possession was adverse to the interests of her tenants in common, any error in this regard was harmless. *St. Croix, Ltd. v. Shell Oil Co.*, 60 V.I. 468, 477 n.3 (V.I. 2014) (citing V.I.S.CT.R. 4(i)).

(explaining that for "prudential reasons" the Superior Court must "refus[e] to exercise jurisdiction" over an attorney's fees motion that is not ripe). The Heirs of George and Wilmar Corporation similarly fail to cite this controlling authority.

In this case, although Mahabir had yet to file her appeal when the Superior Court ruled on the attorney's fees motions, the time to appeal had not expired since the Superior Court did not rule on Mahabir's motion for reconsideration until March 24, 2014, giving the parties until April 23, 2014, to file a notice of appeal. V.I.S.CT.R. 5(a)(4) ("the time for filing the notice of appeal for all parties is extended until 30 days after entry of an order disposing of the last" post-judgment motion, except that "[a] motion for attorney's fees shall not affect the running of the time for appeal"). Therefore, the litigation remained ongoing when the Superior Court ruled on both motions for attorney's fees. *Bryan v. Fawkes*, 61 V.I. 416, 448 (V.I. 2014) (holding that a case remained pending where the time to file a rehearing petition had not expired); *see also Johnson v. McCaughtry*, 265 F.3d 559, 563 & n.3 (7th Cir. 2001) (a case remains pending "for the period during which further review could have been sought, even where such review is not actually sought" (emphasis omitted)) (collecting cases).

 The rule against deciding an attorney's fees motion ·before an appeal is resolved exists because "the Superior Court has no way to determine which party is the 'prevailing party' while the litigation is ongoing."[7] *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 700 (V.I. 2015). While the Heirs of George and Wilmar Corporation prevailed in

---

[7] This Court has had few opportunities to invoke the rule created in *V.I. Gov't Hosps.* since it was first announced in 2008. Closer scrutiny of that decision in the context of the attorney's fees scheme set up by 5 V.I.C. § 541 may be necessary. We suggested as much recently, indicating that preventing the Superior Court from ruling on an attorney's fees motion in time to be appealed along with the underlying judgment encourages piecemeal appeals. *In re Royer*, S. Ct. Civ. No. 2014-0023, 2014 V.I. Supreme LEXIS 34, *5 (V.I. June 30, 2014) (unpublished). We stated there that "the better practice is for the trial court to defer entry of the written judgment until after a ruling is made on the issue of attorney's fees, and incorporate all of its rulings into a single, written judgment." *Id.* In fact, an argument could be made that this procedure represents the better reading of section 541, since it provides that "there shall be allowed to the prevailing party *in the judgment* such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto." 5 V.I.C. § 541(b) (emphasis added). This language would appear to suggest that section 541 could be read to provide for attorney's fees as part of the final judgment in a civil case. Under such a reading, the failure to request attorney's fees and costs before the Superior

the trial proceedings, if this Court were to reverse on appeal, we would have to vacate the attorney's fees orders, and any judicial resources spent resolving those motions would ultimately have been wasted. *See In re Reynolds*, 60 V.I. 330, 336-37 (V.I. 2013) (stressing the importance of promoting judicial economy in Superior Court proceedings).

 But in this case, we affirm the Superior Court's order ruling in favor of the Heirs of George and Wilmar Corporation on Mahabir's adverse possession claim. So while in the past this Court has vacated Superior Court orders ruling on unripe attorney's fees motions where they were "also not ripe at the appellate level," *V.I. Gov't Hosps.*, 50 V.I. at 281, the attorney's fees motions in this case are now ripe. *Ottley*, 61 V.I. at 496-97 (holding that subsequent events may ripen otherwise premature court proceedings) (citing *Rohn v. People*, 57 V.I. 637, 642 n.4 (V.I. 2012)).

Thus, because the motions are now ripe and the status of the parties has not changed as a result of this appeal, vacating and remanding for the Superior Court to rule on these motions again "would serve absolutely no purpose other than [to impose] additional expense and delay, since almost certainly the parties would produce the same evidence [and make the same arguments] and the Superior Court would issue the same decision." *Hansen v. O'Reilly*, 62 V.I. 494, 511 (V.I. 2015). Therefore, "we decline to do so here in the interest of justice and judicial economy." *Id.* (citing *Williams v. People*, 58 V.I. 341, 351 n.8 (V.I. 2013) and *Harvey v. Christopher*, 55 V.I. 565, 569 n.2 (V.I. 2011)); *see also Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 575 (V.I. 2015).

 Nonetheless, we must still remand on other grounds. While we review the Superior Court's decision on a motion for attorney's fees for an abuse of discretion, "meaningful review is not possible where the trial court fails to sufficiently explain its reasoning." *Kalloo*, 62 V.I. at 584 n.11 (quoting *James v. Faust*, 62 V.I. 554, 559 (V.I. 2015)) (alteration omitted).

---

Court enters its final judgment would result in waiver. *See L.O.F.*, 62 V.I. at 667 ("[A] statutory right that does not implicate judicial interests beyond those of the parties is subject to waiver." (quoting *Mustafa v. Camacho*, 59 V.I. 566, 571 n.2 (V.I. 2013))). But in this case, the parties have failed to so much as cite *V.I. Gov't Hosps.* — despite their obligation to cite controlling authority under Supreme Court Rule 15(b) — let alone argue that it should be reexamined, and therefore we decline to do so here.

The Superior Court's orders in this case are prime examples of orders where meaningful review would be impossible.

Mahabir argues on appeal that the Superior Court should have reduced the attorney's fees further or outright denied them because this case involved a "bona fide land dispute." With regard to Wilmar Corporation's motion, Mahabir argues that the Superior Court should have excluded $2,438 in fees related to settlement negotiations, $11,600 related to Wilmar Corporation's failed summary judgment motion, $1,137.50 related to issues raised by other parties, and $575 charged for attorney work unrelated to the litigation. With regard to the motion by the Heirs of George, Mahabir argues that the Superior Court should have excluded $2,825 in fees that pre-dated the filing of the complaint, $1,150 in fees not related to the litigation, $2,125 in fees related to settlement negotiations, and an unspecified amount for unidentified "excessive" and "vague" fee requests.

■■■ Mahabir raised these same issues before the Superior Court in opposing the attorney's fees motions, yet the Superior Court did not address any of them in its orders. This alone constituted error, since the Superior Court cannot simply ignore arguments that a party has properly presented. *Gardiner v. Diaz*, 58 V.I. 199, 205 n.5 (V.I. 2013) (emphasizing that the Superior Court "should, as a routine matter, address the arguments raised before it"). The Superior Court stated in a cursory fashion that the hourly rates Wilmar Corporation's attorneys charged were "high compared to the customary and prevailing market rates for attorneys in the Virgin Islands,"[8] that the issues in this case were not "particularly novel or complex," and that Wilmar Corporation conducted

---

[8] The "determination of a reasonable hourly rate contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012); *see Kalloo*, 62 V.I. at 584 n.11 ("[A]ttorney's fees awards should represent a fair and reasonable portion of the attorney's fees incurred in the prosecution or defense of the action, and not necessarily the whole amount charged by the attorney." (internal quotation marks, citation, and alterations omitted)); *Estien v. Christian*, 507 F.2d 61, 63, 11 V.I. 464 (3d Cir. 1975) (applying the "lodestar" test in determining the reasonableness of attorney's fees under section 541). That "inquiry . . . may include judicial notice of the rates awarded in prior cases and the court's own familiarity with the [prevailing] rates." *Townsend*, 679 F.3d at 59 (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)); *but see Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) ("If hourly rates are disputed, the [trial court] must conduct a hearing to determine the reasonable market rates."). But it is unclear here what the Superior Court relied

minimal discovery. The Superior Court then stated that it was reducing the requested attorney's fees from $35,906.25 to $12,215.63 without explaining how it used these considerations to calculate a reasonable rate of attorney compensation or which hourly fee entries it included or excluded. Similarly, in the order awarding fees to the Heirs of George, while the Superior Court stated that the $2,825 in fees generated before the complaint was unreasonable and that some unspecified fee entries were excessive or unclear, it reduced the requested fees from $26,225 to $6,556.25 without any explanation of how it calculated a reasonable rate of attorney compensation or which hourly fee entries it was basing the award on.[9]

██ "This lack of explanation makes it impossible for this Court to meaningfully review the Superior Court's determination — under abuse of discretion or any other standard." *James*, 62 V.I. at 559. And without

---

on in finding that the attorney's hourly rates were higher than market rates, since it provided absolutely no explanation for this cursory statement.

[9] The Superior Court also reduced the attorney's fees award to the Heirs of George by an unspecified amount because the motion was not filed within 14 days of the December 12, 2013 order. Mahabir argues on appeal that the Superior Court was required to deny the motion in its entirety because it was untimely. Although she cites to some authority for the proposition that a motion for attorney's fees is untimely if filed more than 14 days after the final judgment, she cites no authority and makes no substantive argument in support of her cursory assertion that an untimely filing would *require* the Superior Court to deny all attorney's fees, constituting waiver. V.I.S.CT.R. 22(m). Further, the authority she relies on in arguing that the motion was untimely is *Kansas Packing Co. v. Lavilla*, 39 V.I. 71, 72-74 (V.I. Super. Ct. 1998), where the Superior Court relied on Superior Court Rule 7 to apply the 14-day deadline for attorney's fees motions found in Federal Rule of Civil Procedure 54(d) to motions under 5 V.I.C. § 541. But even assuming Rule 7 is valid, a federal rule cannot apply in Superior Court proceedings through Rule 7 where it conflicts with this Court's precedent or another Superior Court Rule. *Vanterpool*, 63 V.I. at 447; *Percival v. People*, 62 V.I. 477, 485 n.1 (V.I. 2015); *Estick v. People*, 62 V.I. 604, 619 n.7 (V.I. 2015). The rule established in *V.I. Gov't Hosps.* would preclude the Superior Court from applying a rule that requires an attorney's fees motion to be filed within 14 days of the final judgment, since a motion cannot be unripe — i.e., filed too early — and filed too late at the same time. Applying the 14-day deadline in Federal Rule of Civil Procedure 54(d) also conflicts with Superior Court Rule 36(b). SUPER. CT. R. 36(b) ("Where no deadline is set in these Rules for the filing of post-trial motions, the filing deadline shall be thirty (30) days from final judgment, except with respect to Rule 50 of these rules."). But even if the motion was timely, because the Heirs of George did not file a cross-appeal challenging the Superior Court's reduction of their attorney's fees award on that basis, and specifically request in their appellate brief that we affirm the Superior Court's award, we decline to reverse on that ground. *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 761-62 (V.I. 2014) (citing *People v. Ward*, 55 V.I. 829, 841 (V.I. 2011)).

some explanation of how the Superior Court reached the sums it did, or whether its award included any of the sums Mahabir argued should have been excluded, there is simply no way this Court can review the Superior Court's orders. *See Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 541 (V.I. 2015) (stating the general rule that where the Superior Court does not address an argument raised before it, this Court will not address it in the first instance); *accord Pedro v. Ranger Am. of the V.I., Inc.* 63 V.I. 511, 521 n.6 (V.I. 2015) ("[T]his Court is one of review, not first instance.").

Therefore, we remand the record in this matter for the Superior Court to clarify its April 8, 2014 orders awarding attorney's fees to the Heirs of George and Wilmar Corporation. Because we remand the record alone, the Superior Court "does not . . . have the authority to amend the ruling that is on appeal," since the case remains pending before this Court. *Hodge*, 62 V.I. at 684 (quoting *Hypolite v. People*, 51 V.I. 97, 102 (V.I. 2009)). Instead, the remand "is to give the [Superior Court] the opportunity to complete or clarify the record so that this Court will have an adequate basis for review of [the Superior Court's] rulings." *Id.* And once the Superior Court completes the remand proceedings, this Court's appellate proceedings will resume without the need for the parties to file a new notice of appeal. *Gould v. Salem*, 59 V.I. 813, 817 (V.I. 2013) (citing *Hypolite*, 51 V.I. at 102-03).

## IV. CONCLUSION

▮ The Superior Court did not err in holding that Mahabir failed to establish adverse possession against her cotenants. A plaintiff seeking to establish adverse possession against her tenants in common bears the burden of showing that she made her cotenants actually or constructively aware that she was using the property in a manner that was hostile to their interests in the property for at least 15 years. Here, there was no evidence suggesting that Mahabir provided this notice until 2000, only nine years before she brought this action. Therefore, we affirm the Superior Court's December 12, 2014 order dismissing this action. But because the Superior Court failed to provide any explanation for the attorney's fees awards to the Heirs of George and Wilmar Corporation in its April 8, 2014 orders, we remand the record to the Superior Court for it to clarify how it reached its decisions in those orders.